**BANKERS TRUST COMPANY, and Charles C. Link, Jr., as Co-Executors of the Estate of Mae Moffat, Deceased, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**69 Civ. 848.**

United States District Court
S. D. New York.

Jan. 28, 1970.

Gregory & Adams, New York City, for Bankers Trust Co., Co-Executor; Julian A. Gregory, New York City, of counsel.

Burns & Van Kirk, New York City, for Charles C. Link, Jr., Co-Executor; Joseph W. Burns, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, New York City, for defendant; Richard M. Hall and Richard S. Rudick, Asst. U. S. Attys., New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This is an action brought by Bankers Trust Company and Charles C. Link, Jr., as co-executors of the Estate of Mae Moffat. Plaintiffs seek a refund of estate taxes and interest from the date of payment. This court's jurisdiction is predicated on 28 U.S.C. § 1346(a) (1).

Both plaintiffs and defendant move for summary judgment under Rule 56, Fed.R.Civ.P. There is no genuine issue as to any material fact, and, accordingly, the case is ripe for summary judgment.

Mrs. Moffat died on January 31, 1962, and her will was admitted to probate by the Surrogate's Court, New York County, on March 5, 1962. The will creates seven separate trusts, each of which bequeaths a life interest to a named individual for private noncharitable purposes with remainder to a charity. Plaintiffs, Bankers Trust Company and Charles C. Link, Jr., are named as sole trustees or co-trustees in all seven trusts.

Plaintiffs, on April 26, 1963, filed a federal estate tax return reporting a gross estate of $2,855,410.44 and a taxable estate of $1,667,509.85. They paid an estate tax of $523,598.72. The executors claimed a deduction of $787,859.39 for nine charitable bequests, which included the seven trusts in question here.

After audit and some conferences between the Internal Revenue auditor and the executors and their attorney, Internal Revenue issued a Form 890 proposing an overassessment of $6,949.17, superseded by a Form 890–B proposing an overassessment of $9,510.87. The executors issued a waiver for the latter overassessment on October 26, 1965 and mailed it to the District Director on November 8, 1965.

The agent who conducted the audit then notified the executors that Form 890–B was being withdrawn and that the charitable deduction for the seven trusts in question was to be disallowed. The Service issued, on January 24, 1966, a notice of deficiency disallowing deductions for all seven trusts in question. The estate, on April 22, 1966, paid the deficiency in the amount of $340,046.29 and on October 26, 1966 filed a claim for refund of $401,213.02.

The Internal Revenue Code of 1954, § 2055, provides for a deduction from gross estate for any bequests to a corporation or organization organized and operated exclusively for religious, charitable, scientific, literary or educational purposes.[1] There is no question that the organizations named as remaindermen qualify as charitable or educational organizations under the Internal Revenue Code.

The question presented is whether an estate is entitled to a charitable deduction where a testator bequeaths the remainder of a trust to charity, but grants a life interest to individuals for private noncharitable purposes. In such situations, a deduction may be taken only if the remainder interest is "presently ascertainable."[2]

The government claims that the remainder interest here cannot be ascertained because the will permits the trustees to invest in wasting assets and to allocate cash receipts and expenses either to income or principal. The government's theory is that the trustees can invest, for example, in an oil well and allocate all the regular receipts from the well to income, until the well is totally depleted, and, therefore, deny the charitable remaindermen the original corpus invested in the wells.

■ Charitable remainders, clearly, disqualify for a charitable deduction when the trustee is granted a specific power to invade corpus for the benefit of noncharitable life beneficiaries if no standards are imposed, either by the trust instrument or local law, which provide a predictable measure for determining the amount of money that the charity will eventually receive.[3]

■ The trusts here do not, however, grant trustees a power to invade corpus. The trustees can invest in wasting assets and can allocate cash dividends to income, but these powers must be read consistently with testator's obvious intention to grant the corpus of the trust to charity. If we were to construe these powers as an unfettered discretion to invade, and even consume, the corpus of the trust, we would be allowing the trustees the power to completely eradicate the remainder interest and therefore alter testator's plan for the distribution of her estate,[4] without there being any direct grant of such broad discretionary power.

■ The New York law imposes on a trustee the duty to act with fidelity for the benefit of both the income benefi-

---

1. 26 U.S.C. § 2055(a) (2).

2. 26 C.F.R. § 20.2055–2; Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929); Merchants Nat'l Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943).

3. Merchants Nat'l Bank of Boston v. Commissioner of Internal Revenue, *supra*, at 261, 64 S.Ct. 108.

4. In re Estate of Dickson, 38 Misc.2d 678, 237 N.Y.S.2d 572 (Surr.Ct., N.Y.Co. 1963).

ciaries and the remaindermen.[5] If trustees were to use their power to purchase wasting assets and their power to allocate receipts in a manner that would deplete or consume the trust corpus, they would certainly be violating their equitably imposed fiduciary duty to act in the best interests of the charitable remaindermen and the remaindermen could invoke equity to prevent or void their action[6] or hold them personally liable for the breach of trust.[7]

The trustees' powers, therefore, to invest in wasting assets or to allocate cash receipts to principal or income is not an indirect power of invasion because it is limited by the testator's obvious intention of granting the remainder to charity and by New York law which requires a trustee to act for the benefit of the remaindermen. The charitable remainder is ascertainable and qualifies for a deduction from gross estate under § 2055 of the Internal Revenue Code.[8] Since the trustees have already paid the deficiency based on an improper disallowance of this deduction, they are entitled to a refund. We turn, now, to consider the amount of that refund.

Plaintiffs paid a deficiency of $340,046.29 in estate taxes due to a disallowance of charitable deductions for the seven trusts involved here, and normally their refund would be that amount plus interest from the date the deficiency was paid.

Plaintiffs, however, seek to re-evaluate the amount of the original deduction taken for two of the seven trusts using actual life, rather than actuarial tables, to determine the value of the corpus and, therefore, request a refund of $401,213.02.

The government concedes that plaintiffs would be entitled to a refund of $340,046.29 if the estate is granted a charitable deduction for the seven trusts, but claims that the estate is time-barred from any refund beyond that sum plus $9,510.87 based on a waiver of assessment (Form 890) executed and delivered to Internal Revenue within three years of the filing of the return.

Claims for a refund must be filed within three years of the filing of the return, or within two years of the payment of the proposed deficiency.[9] In the latter situation, however, the refund cannot exceed the tax paid during the two years immediately preceding the filing of the claim for a refund.[10] Here, plaintiffs filed the estate tax return on August 26, 1963 and filed the claim for refund on October 26, 1966, more than three years later. The claim for refund was, however, filed only five months after the proposed deficiency of $340,046.29 was paid, and the estate is, therefore, within the alternative limitation period of two years from payment of the deficiency. The refund is limited, therefore, to the portion of the tax paid during that period, $340,046.29.[11]

The only exception to this strict limitation rule is for any adjustments reflected in a waiver of restrictions of assessment (Form 890) executed and delivered to Internal Revenue within three years of the filing of the return.[12]

---

5. In re Hubbell's Will, 302 N.Y. 246, 254, 97 N.E.2d 888, 47 A.L.R.2d 176 (1951); In re Estate of Dickson, *supra*, 237 N.Y.S.2d at 577; In re Gould's Will, 17 App.Div.2d 401, 234 N.Y.S.2d 825, 828 (3d Dep't 1962).

6. See, In re Gould's Will, *supra*.

7. In re Fulton Trust Co. of N. Y., 257 N.Y. 132, 177 N.E. 397, 77 A.L.R. 499 (1931); Bruen v. Gillet, 115 N.Y. 10, 21 N.E. 676, 4 L.R. 529 (1889); Litchfield v. White, 7 N.Y. 438 (1852). Section 11–1.7(a) (1), N.Y. Estates Powers & Trust Law, voids any attempt to exonerate a trustee from personal liability for failure to exercise reasonable care, diligence and prudence.

8. See Estate of Stewart v. Commissioner, 52 T.C. 830 (U.S.Tax Ct.1969).

9. 26 U.S.C. § 6511(a).

10. 26 U.S.C. § 6511(b) (2) (B); Fox v. United States, 248 F.Supp. 1021 (W.D. Wash.1965).

11. See 26 U.S.C. § 6511(a) and (b) (2) (B).

12. Rev.Rul. 68–65, 1968 Int.Rev.Bull. No. 6, at 25.

Here, the estate filed such a waiver on November 8, 1965, within three years of the date of filing, and the waiver concerned adjustments of $9,510.87.

Plaintiffs' refund is, therefore, limited to $349,557.16, that is, $340,046.29 deficiency payment plus the $9,510.87 reflected in the waiver. The estate is also entitled to interest on the $340,046.-29 refund at 6% per annum from the date the deficiency was paid, April 22, 1966, "to a date (to be determined by the Secretary or his delegate) preceding the date of the refund check by not more than 30 days." [13]

Accordingly, plaintiffs' motion for summary judgment is granted, and defendant's motion for summary judgment denied. Submit judgment in accordance with the foregoing opinion within ten (10) days.

13. 26 U.S.C. § 6611(a) and (b) (2). See, Colt's Mfg. Co. v. Commissioner of Internal Revenue, 306 F.2d 929, 932 (2d Cir. 1962).