**ESTATE of Harry A. TOULMIN, Jr., Virginia Bernthal Toulmin, Executrix, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 3710.**

United States District Court,
S. D. Ohio, W. D.

March 19, 1971.

M. R. Schlesinger, Arter & Hadden, Cleveland, Ohio, Eugene Mayl, Murphy & Mayl, Dayton, Ohio, for plaintiff.

Johnnie M. Walters, Asst. Atty. Gen., Donald R. Anderson, Robert J. Hipple, Attys., Dept. of Justice, Washington, D. C., William W. Milligan, U. S. Atty., Robert Steinberg, Asst. U. S. Atty., Dayton, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

WEINMAN, Chief Judge.

This is a tax refund action brought by plaintiff, Estate of Harry A. Toulmin, Jr., against the defendant, United States of America, seeking a refund of $202,-745.45 plus interest for estate tax allegedly wrongfully assessed and collected by the Internal Revenue Service. This amount arose from the disallowance of a charitable deduction for the present value of a testamentary trust remainder interest passing to Georgetown University Medical School of Washington, D. C. This Court has jurisdiction by virtue of 28 U.S.C. § 1346(a) (1).

This cause is before this Court upon the motions of both plaintiff and defendant for summary judgment.

The facts are not in dispute. The decedent, Harry A. Toulmin, Jr. died on March 8, 1965. The decedent left a Will modified by five codicils which was admitted to probate. Under said Will the decedent established two testamentary trusts designated a "Marital Deduction Trust" and a "Trust Estate."

Under Item VI of said Will modified by codicils the decedent in substance directed that his trustees pay the income from the "Trust Estate" to his widow,

Virginia Toulmin, for life with the exception of $3000.00 payable annually to decedent's chauffeur for life. Upon the death of the last surviving income beneficiary the remainder interest of the "Trust Estate" was to pass to Georgetown Medical School of Washington, D.C.

Under Item VII of said Will the decedent so far as is relevant granted the trustees the following administrative powers in connection with the "Trust Estate":

"(c) To enforce, defend against or have adjudicated, by legal proceedings or arbitration, or abandon, compound, adjust, settle, or compromise, any claim or demand whatsoever in favor of or against the Trust Estate;

\* \* \* \* \* \*

(e) To invest or reinvest in bonds of the United States of America, or. of any state, municipality or subdivision thereof; or in first mortgages and first mortgage bonds on or secured by improved real estate located in any state; or in bonds, notes, debentures, mortgages or stock (including voting trust certificates and shares of all classes) of any corporation within the United States of America, or in certificates of beneficial interest and participation in or promises to pay issued against or secured in whole or in part by groups of securities similar to or embracing those securities above specified; or in real or other property, although any of the investments herein set forth are not of the character permitted for investments by Trustees under any statute or rule of law governing investments of trust funds by fiduciaries, or otherwise, now or from time to time hereafter in force;

\* \* \* \* \* \*

(m) To determine how all receipts and disbursements shall be credited or charged against, or apportioned between income and principal and against or between the separate trusts;

\* \* \* \* \* \*

(r) To make all payments or distributions without liability for erroneous payments or distributions made in good faith and without actual notice or knowledge of the changed condition or status of any beneficiary receiving payments or distribution upon a condition.

\* \* \* \* \* \*

(t) To determine the expedience, propriety, necessity or advisability of exercising, partially exercising, or not exercising any discretionary powers.

\* \* \* \* \* \*

(v) To do all other things the Trustee may deem best for the conservation, protection and betterment of the Trust Estate, and to the best interest and advantage of each of the beneficiaries and his or her dependents, as fully and completely as if the trustees were the unqualified owners thereof."

Plaintiff filed a federal estate tax return for decedent's estate on June 28, 1966. In said return plaintiff took a charitable deduction for $509,166.00. This amount represents the value at the time of decedent's death of the principal of the "Trust Estate" passing to Georgetown University Medical School upon the death of the last income beneficiary.

Upon audit of the federal estate tax return, the Internal Revenue Service disallowed the claimed deduction for the value of the remainder interest passing to Georgetown University Medical School on the grounds that the administrative powers granted the trustees under Item VII of the Will, modified by codicils created an unrestricted power to divert the principal of the charitable remainder trust and thus the value of the charitable remainder was not presently ascertainable as of the date of decedent's death. A deficiency of $206,598.02 in net federal estate tax was assessed. Plaintiff paid this deficiency and filed a timely claim for refund. On May 7, 1969, the District Director of Internal Revenue of Cincinnati, Ohio rejected plaintiff's claim for refund by Certified Mail. Plaintiff then commenced this action to

recover the deficiency she paid plus interest.

Section 2055(a), Title 26 U.S.C. which controls the present case, provides that for federal estate tax purposes an estate may deduct from the value of the gross estate the amount of all bequests to certain designated political, charitable or religious organizations. It is admitted by the government that the Georgetown University Medical School is a charitable institution described in Section 2055(a)(2), Title 26 U.S.C.

Where as in the present case, a trust is created for both a charitable and a private purpose, the Estate Tax Regulations Section 20.2055–2(a) and (b) allow a deduction for the value of the charitable remainder if (1) the charitable interest is "presently ascertainable and hence severable from the non-charitable interest," and (2) viewing the circumstances as of the time of the decedent's death, "the possibility that the charitable transfer will not become effective is so remote as to be negligible." The regulation further provides that if the trustee is empowered to divert the property or fund, in whole or in part for a non-charitable purpose or use, the charitable deduction will be limited to that portion, if any, of the property or fund which is exempt from the exercise of the power.

It is established law that where a trustee has unlimited power to divert the principal of a charitable remainder trust for the benefit of the income beneficiary, the value of the charitable remainder is not presently ascertainable. A deduction for the value of the charitable remainder is only allowed where the power to invade or divert principal is restricted by a standard "fixed in fact and capable of being stated in definite terms of money" so that the amount that the charity will actually receive is accurately calculable at the time of the decedent's death. Merchants National Bank of Boston, Executor v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929).

The issue raised in this action is whether the administrative powers granted the trustee to invest corpus in all forms of property without regard to restrictions imposed by Ohio law on investments by fiduciaries and to allocate all receipts and disbursements between corpus and income constitute a power, unlimited by a measurable standard, to divert corpus from the charitable remainder trust so that the value of the charitable remainder is not presently ascertainable and thus non-deductible.

Under the terms of Item VII of decedent's Will the trustees were granted discretionary powers (1) to invest and to hold any type of property, although any of the investments are not of the character permitted by trustees under any statute or rule of law governing investments of trust funds and (2) to determine how all receipts and disbursements shall be credited or charged against or apportioned between income and principal and against or between the separate trusts.

It is the position of the government that these discretionary administrative powers enable the trustees to divert the corpus of the charitable remainder trust to an unascertainable degree. For example the government argues that the trustees could purchase wasting assets such as mineral interests and leaseholds, allocate all receipts therefrom to the income account for distribution to the non-charitable income beneficiaries and thus reduce the trust corpus by the purchase price of the wasting assets upon the exhaustion of such assets. The government also argues that the trustees could treat stock dividends, capital gains and stock received from stock splits as income to be distributed to the income beneficiaries and as a result reduce the trust corpus. The government contends that no presently ascertainable portion of the trust corpus is exempt from the exercise of these powers to divert corpus, that since the trustees are granted discretion in the exercise of the administrative powers, the exercise of these powers is not limited by a ready standard and the

interest which will eventually pass to charity is not "fixed in fact or capable of being stated in definite terms of money."

The plaintiff contends that the trustees have no power to divert items of principal to the income beneficiaries because the law of Ohio respecting the decedent's intent and the particular Toulmin facts preclude principal distortion.

The express terms of the decedent's will do not set forth a measurable standard limiting the trustees discretion in the exercise of their administrative powers. Thus the dispositive question of this action is whether Ohio law operates to preclude the trustees from diverting items of principal from the charity to the income beneficiary. In other words does Ohio law impose measureable and definite restrictions upon the exercise of discretionary administrative powers by the trustees so that the value of the charitable remainder is ascertainable at the time of the decedent's death.

■ The general rules of Ohio law recognize that where there are successive beneficiaries of a trust, the trustee owes a fiduciary duty to both the life beneficiary and the remaindermen. The trustee has the underlying duty to treat all beneficiaries impartially unless the trust instrument establishes a preference.

■ In the absence of a contrary intent on the part of the testator the general rules of Ohio law relating to the investment of corpus and the allocation of receipts between income and principal are designed to preserve the corpus for the benefit of the remaindermen. With respect to the allocation of stock dividends, Ohio has adopted the so-called Massachusetts rule which provides that the life tenant is entitled to cash dividends during the existence of the life tenancy and all share dividends go to corpus for the benefit of remaindermen. Lamb v. Lehmann, 110 Ohio St. 59, 143 N.E. 276; 12 O.Jur.2d Corporations § 609. Since the investment in wasting assets, such as mineral rights and leases, would do

an injustice to the remaindermen because corpus is necessarily depleted, in the absence of a contrary intent, Ohio law requires a trustee to dispose of wasting assets or amortize the depreciation out of income so that the corpus is kept intact. 54 O.Jur.2d Trusts § 214. Where a trustee purchases bonds at a premium, the trustee is under a duty to amortize the premium and ultimately make it up out of income so that corpus remains intact at the maturity date of the bond.

If these rules of law applicable to the administration of trusts govern the trustees of the Toulmin "Trust Estate" trust, there is no question that the government's claim that the trustees have an unlimited power to divert corpus from the charitable remainderman to the income beneficiary would be without merit. However, the crucial consideration in the present case is the extent to which the broad investment and discretionary allocation powers granted the Toulmin trustees exempt the trustees from the requirements of established Ohio law in the administration of the trust.

The leading decision under Ohio law on this issue is Sherman v. Sherman, 5 Ohio St.2d 27, 213 N.E.2d 360 (1966). In the Sherman case the testator set up eight trusts for his wife and children, for his grandchild, for his lineal descendants and for his heirs. Under his will the testator granted the trustees broad discretion in the administration of the trust. The trustees were empowered to make investments in all forms of property without any limitation whatsoever as to the character of investment under any statute or rule of law regarding trust funds or investments by fiduciaries or otherwise. The trustees were empowered to determine in their discretion how all receipts and disbursements shall be charged, credited or apportioned between income and principal except that premiums on investments shall be charged against principal and shall be amortized against income. The trustees were authorized to do all other acts in their judgment necessary or desirable for the

proper management, investment and distribution of the trust.

The income beneficiaries of the Sherman trust who were dissatisfied with the amount of income distributed to them suggested that the trustees use their discretionary allocation powers to distribute capital gains and stock acquired from dividends and stock splits as income. The trustees brought an action in the Probate Court of Montgomery (Dayton), Ohio requesting a construction of the Will and a determination as to whether the grant of discretionary investment and allocation powers exempted the trustees from the established law of Ohio regarding allocation of receipts between income and principal.

The Probate Court in an opinion reported at 202 N.E.2d 443 (1962) held (1) that because of the broad powers granted in the Will, the testator had dispensed with the requirement of equal treatment of the beneficiaries, at least to the extent that any unequal treatment did not frustrate the underlying testamentary plan (2) that the term "receipts" as used in the Will's allocation clause includes realized capital gains and newly issued shares of stock resulting from stock dividends or stock splits (3) that absent a provision in the Will to the contrary Ohio law requires that such proceeds be allocated to principal and (4) that the discretionary allocation clause because it was surrounded by other extremely broad power clauses, permitted the trustees to depart from the established allocation rule subject to the requirement that any allocation pursuant thereto must be with reason and in good faith, not arbitrary.

The Ohio Supreme Court in Sherman v. Sherman, supra affirmed the decision of the Probate Court of Montgomery County, Ohio holding in syllabus one and two:

"1. The fundamental rule of construction of a will is that the intent of the testator must govern, unless to give effect to that intent would create an estate forbidden by law.

2. Where a will which establishes a trust grants to the trustees of the property broad powers of sale, investment, voting of stock and all other powers to act which, in their judgment, are necessary to proper and advantageous management of the trust, and gives the trustees the power to determine the propriety of their own actions by a majority vote of the trustees, and gives the trustees discretion to allocate *all receipts* and all disbursements between principal and income, with the sole exception that premiums on investments shall be charged against principal, such powers indicate that it was the intention of the testator to permit the trustees, in the exercise of their discretion, to allocate capital gains and stock dividends to income, and in the absence of bad faith, abuse of discretion or action inconsistent with the purposes for which the trust was created, the court will not interfere with such allocation."

The case of Sherman v. Sherman, *supra* establishes that a discretionary allocation clause such as the clause contained in the Toulmin Will permits the trustees to depart from the normal rules of trust administration so long as they act in good faith, without abuse of discretion and consistent with the purposes for which the trust was created.

The government argues that since the Toulmin trustees have the power to depart from normal rules of state law designed to assure a fair apportionment as between the life beneficiaries and the remainderman, any departure from these rules alters the dividing line between the income beneficiary and the remainderman and makes it impossible to guarantee that any predictable portion of the trust corpus will pass to the charity upon the death of the last income beneficiary. The Court does not agree.

The Estate Tax Regulations and the courts require that the power to invade or divert principal from a charitable remainder trust be limited by a measura-

ble standard so that a highly reliable appraisal of the amount the charity will receive can be made at the time of the testator's death.

The present fair market value of a charitable remainder is computed by use of Table I in paragraph (f) of the Estate Tax Regulations § 20.-2031.7. The value is computed by multiplying the value of corpus at the date of death by a percentage fixed with relation to the age of the income beneficiary. Thus, the present value of the remainder is computed on the basis of the present value of the corpus at the date of the testator's death. Where the trustees lack the power to divert or diminish trust corpus below its market value at the time of the testator's death, the Internal Revenue Service Table provides a highly reliable calculation of the present value of the remainder interest.

If the Toulmin trustees have the power to divert corpus to the extent that corpus is reduced below its original value at the time of the testator's death, then the value as computed by use of Table I lacks genuine reliability and the value of the remainder is not presently ascertainable.

As the court sees it, the critical question in this action is whether Ohio law precludes the Toulmin trustees from distributing stock dividends or stock acquired from stock splits or investing in wasting assets where the effect of such allocation and investment would reduce trust corpus below its market value as of the date of the testator's death.

In the present case the testator's Will and the subsequent deletions therefrom by codicil clearly show that the testator intended to make a bequest of trust principal to Georgetown University Medical School and did not desire to prefer the income beneficiaries over the charitable remainderman. The testator in great detail elaborated the fact that his grandfather was the first professor at Georgetown University Medical School and set up the requirement that the pictures of his grandmother and grandfather be hung on the walls of Georgetown Medical School. The testator by codicil deleted provision of his Will that permitted the trustees to invade corpus. The testator further struck from his Will provisions indicating that his principle purpose was to provide for the income beneficiary, that the rights and interest of the remainderman shall be subordinate and incidental to the rights of the income beneficiary and that the provisions should be construed liberally for the benefit of the income beneficiary.

Under Ohio law the trustees have a duty to administer the trust in a manner which is consistent with the testamentary plan. Where the trust is created for the benefit of successive beneficiaries, the trustee may not favor income beneficiaries over remaindermen or treat them unequally unless the Will expresses a contrary intent. The Toulmin Will clearly discloses a testamentary plan to make a bequest to charity and does not disclose a testamentary intent to favor the income beneficiaries. If the trustees were to utilize their administrative powers to deplete principal below its original value at the date the trust was created, such erosion of corpus would totally disregard the interests and rights of the charitable remainderman and would constitute a breach of fiduciary duty owed the remainderman. Administration of the trust in a manner which would not keep the original value of principal intact for the benefit of the remainderman would totally frustrate the underlying testamentary intent to make a bequest of principal to charity. Under the circumstances of the present case, Ohio law would enforce Mr. Toulmin's testamentary intent and the remainderman could obtain relief in the Ohio Courts to restrain or void a distribution or investment which would deplete or consume trust corpus.

The holding of the Ohio Supreme Court in Sherman v. Sherman, supra does not require a contrary result. The Sherman case must be understood in light of its particular factual context. In Sherman the testator who died in 1939 set

up eight testamentary trusts, each having corpus consisting of growth stock which had an original cost value of $375,000.00. By 1960 the market value of the corpus of each trust had grown in value of $2,397,000.00. The trustees in administering the Sherman trust followed the normal allocation rules that newly acquired stock from stock dividends and stock splits should be allocated to principal. The adherence to the normal allocation rules favored the remaindermen over the income beneficiaries in that the income beneficiaries received the relatively low cash dividends whereas a substantial portion of corporate earnings were not distributed as cash dividends but were reinvested in the corporation with the result that the market value of the stock increased to the benefit of the remaindermen.

It is clear from the facts of Sherman that the Ohio Supreme Court did not pass on the question of whether the discretionary allocation clause permitted the trustees to disregard normal allocation rules where the effect thereof would be to deplete corpus below its original value to the detriment of the interests of the remaindermen.

As the Court held in Sherman the trustees who are vested with discretionary allocation power must act in good faith and in a manner consistent with the purposes of the trust. It is clear in the present case that Mr. Toulmin intended to create a trust under which corpus would pass to the charity upon the death of the last income beneficiary. If the Toulmin trustees were to disregard the interests of the remainderman by exercising their administrative powers to erode principal below its original value, the trustees would frustrate the testator's underlying testamentary plan. This Court is convinced that if this question were before the Ohio Supreme Court, the Court would find that depletion of principal below its original value would constitute a breach of the trustees' fiduciary duty to the charitable remainderman and would constitute prohibited

action "inconsistent with the purposes for which the trust was created."

The Tax Court and the District Courts which have considered this question have rejected the government's contention that the value of a charitable remainder is unascertainable by reason of broad administrative powers which create an indirect power to divert corpus. See Miami Beach First National Bank v. United States, 69–2 USTC § 12627 (On appeal by Government to 5th Circuit); Gardiner v. United States, 69–2 USTC § 12628 (on appeal by Government to 9th Cir.); Bankers Trust Company v. United States, 308 F.Supp. 545 (S.D.N.Y.) (on appeal by Government to 2nd Cir.); Peoples Trust Company of Bergen County v. United States, 311 F.Supp. 1197 (D.N.J.1970) (on appeal by Government to 3rd Circuit); Estate of McGillicuddy, 54 T.C. 315 (1970); Greer v. United States, 69–2 USTC § 12628 (1970); Old Colony Trust Company v. United States, 317 F.Supp. 618 (D.Mass.1970).

The primary reason for rejection of the government's contention was the finding that the laws of the state wherein the trusts were administered precluded the trustees from using their discretionary allocation powers to dilute corpus to the detriment of the remainderman.

In the recent decision in Old Colony Trust Company v. United States, supra the District Court applying Massachusetts law held that the law of that state preclude a trustee under a discretionary allocation clause from distributing stock dividends beyond a de minimis amount. The Old Colony Trust Company case is a clearer case in favor of the taxpayer in that the Massachusetts Supreme Court, unlike the Ohio Supreme Court, has construed a broad allocation clause as only permitting the trustees to decide in cases of doubt. However, the District Court went on to decide that, assuming the discretionary allocation power permitted the distribution of stock dividends, the power was limited by a fixed

standard imposed by state law. The Court stated at page 622:

"Even if the fourth unnumbered paragraph is read to contain a power to distribute stock dividends, this power is limited by a fixed standard as required by *Ithaca Trust supra.* This standard is supplied by the obvious intention of the testator to create charitable remainder interests and by the principles of the Massachusetts law of fiduciary duties as enunciated in Old Colony Trust Company v. Silliman, *supra* [352 Mass. 6, 223 N.E.2d 504]. In the light of that express intention, any distribution of stock dividends to the life beneficiaries which upset the basic relationship of life tenants and remaindermen created by the will, i. e., any distribution of stock dividends beyond a *de minimis* amount would be a breach of trust under Massachusetts law. The reasoning and language of Bankers Trust Co. v. United States, 308 F.Supp. 545 (S.D. N.Y.1970) is applicable to the case at bar.

'If trustees were to use their power to purchase wasting assets and their power to allocate receipts in a manner that would deplete or consume the trust corpus, they would certainly be violating their equitably imposed fiduciary duty to act in the best interests of the charitable remaindermen and the remaindermen could invoke equity to prevent or void their action or hold them personally liable for the breach of trust.

'The trustees' powers, therefore, to invest in wasting assets or to allocate cash receipts to principal or income is not an indirect power of invasion because it is limited by the testator's obvious intention of granting the remainder to charity and by New York law which requires a trustee to act for the benefit of the remaindermen. The charitable remainder is ascertainable and qualifies for a deduction from gross estate under § 2055 of the Internal Revenue Code. * * *' 308 F.Supp. at p. 548."

This is the first case of this type arising under Ohio law. The Court believes that the Ohio Supreme Court would not construe the allocation clause in the Toulmin Will as empowering the trustees to erode principal below its original value where such erosion would completely disregard the rights of the charitable remainderman and frustrate the testator's desire to make a bequest of principal to the charitable remainderman.

It must be recognized that the government has prevailed in the recent case of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (C.A. 3, 1971). In Stewart the settler granted her trustee extremely broad allocation and investment powers. The allocation clause of the trust provided that the trustee in its sole and absolute discretion could allocate to principal or income (1) any dividend of whatever kind or nature (2) any property received upon any exchange, recapitalization or dissolution (3) any payments received in respect to a wasting asset or unproductive property and to amortize in whole or in part the premium at which the property is received and to discontinue any sinking fund and to treat the same as income in whole or in part. The trust instrument expressly granted the trustee the power to depart from any rule of law.

The Third Circuit recognized that these broad powers, if literally applied by the trustee could be used to divert principal to an unascertainable degree. New York law as found in Section 11–2.1(a) of the New York Estates, Powers and Trusts Law, McKinney's Consol.Laws, c. 17-b, did not provide a measurable standard governing the exercise of discretionary administrative powers. In fact as the Third Circuit noted, this section of New York law granted such broad powers to a trustee that a substantial question was raised in New York as to whether a trustee could, in effect, deprive the surviving spouse of substantially all the income from a trust established for her benefit by the manner in which receipts are allocated between

income and principal. The New York law was specifically amended to grant the New York Surrogate Court jurisdiction to supervise the fiduciary so as to prevent interference with the spouse's income but otherwise the provisions of Section 11–2.1(a) remained in effect.

In contrast the Toulmin Will contains a simple allocation clause which in substance grants the trustees discretionary power to allocate all receipts and disbursements between income and principal and between the separate trusts. The Toulmin Will does not dispense with the requirement of maintaining a sinking fund for wasting assets. The Toulmin Will does not contain an express provision authorizing the trustees to follow or depart in whole or in part from any rule of law. Furthermore, Mr. Toulmin deleted from his Will a provision which directed the trustees to prefer the income beneficiaries over the remainderman.

Of greater significance is the fact that Ohio does not have a statute, equivalent to the New York Estates, Powers and Trusts law which grants extremely broad powers to trustees. While the Ohio Supreme Court in Sherman v. Sherman, *supra*, has held that a discretionary allocation clause permits a trustee to allocate capital gains and stock dividends to income, the Court was careful to limit its holdings to situations where the trustees act in good faith, without abuse of discretion and in a manner consistent with the purposes for which the trust was created. Since the corpus of the Sherman trusts had greatly increased in value, the distribution of capital gains and stock dividends could not jeopardize the rights of the remaindermen to have the original value of corpus kept intact. If the Toulmin trustees were to exercise their allocation powers in a manner which would erode the trust corpus below its original value, such action would clearly frustrate the testator's underlying intent to make a bequest of corpus to charity and would constitute prohibited "action inconsistent with the purposes for which the trust was created."

The Court concludes that the intent of the testator herein to make a bequest of corpus to charity and the rules of Ohio law requiring a trustee to administer a trust in a manner consistent with the testamentary intent operate to preclude the Toulmin trustees from eroding principal without preserving the original value of corpus intact for the benefit of the Georgetown University Medical School and thus the value of the charitable remainder is presently ascertainable.

Since Ohio law operates to preclude the Toulmin trustees from administering the trust in a manner which would erode principal below its original value, the possibility that the principal will not pass to the charity is so remote as to be negligible.

Having found that the value of the charitable remainder is presently ascertainable, the Court must resolve the government's claim that the present value of the charitable remainder, $509,166.00, must be reduced by $125,014.99, representing the amount paid by the Estate to the testator's daughter in settlement of a Will contest.

The facts relating to the settlement of the Will contest as shown by plaintiff's answers to interrogatories are undisputed. The assets of the Toulmin Estate included ten shares of no par common stock in Business Corners, Inc. a holding company solely owned by the testator. Each share had a fair market value of $81,463.98 as of the testator's death.

With the exception of $100.00 paid by the attorneys for the Estate, the amount paid to the testator's daughter in settlement of the Will contest was taken from the capital assets of Business Corners Inc. The daughter was paid the sum of $24,914.99 in cash from the accumulated earnings and surplus of Business Corners, Inc. and received securities of her own selection from the portfolio of Business Corners, Inc. having a value of $100,000.00. As a result of this payment, the total value of the outstanding stock

held by the Estate was reduced by $124,914.99 and the assets or fund available for distribution to the charity upon the death of the last income beneficiary was correspondingly reduced.

■ Since the settlement was paid out of the capital assets, not the current income of Business Corners, Inc. the value of the charitable remainder interest was necessarily reduced. However, the Court does not agree with the claim of the government that the present value of the remainder interest should be reduced by $124,914.99. If the bequest to charity was to take effect upon the distribution of the Estate, the government's claim would be meritorious. Since the interest passing to charity is a remainder taking effect upon the death of the last income beneficiary, the Court finds that the present value of the charitable remainder should be computed by reducing the fair market value of the Estate assets as of the testator's death by $124,914.99 and then recomputing the value of the charitable remainder interest in accordance with the applicable Estate Tax Regulations.

Accordingly, the motion of plaintiff for summary judgment on the issue of deductibility hereby is sustained and defendant's cross-motion for summary judgment on this issue hereby is denied.

The defendant's motion for summary judgment on its claim for a set-off is sustained to the extent that the market value of the trust corpus as of the date of the testator's death must be reduced by $124,914.99 and the present value of the charitable remainder determined in accordance with applicable Estate Tax Regulations on the basis of the reduced value of corpus.

## JUDGMENT

Counsel for plaintiff shall prepare a judgment entry in conformity with this opinion and submit the same to the Court for approval.