## Thompson's Estate.

*Decedents' estates—Stock—Stock dividends—Life tenant and re-mainderman—Distribution.*

1. It is immaterial, as between life tenants and remaindermen, what method is adopted for the distribution of profits accruing after the commencement of the trust.

2. Additional stock issued by a corporation belongs to the life tenants, if it represents such profits.

3. A trustee, in dealing with the trust estate, must, if possible, pursue such a course as will prevent one party in interest from being benefited at the expense of another.

Argued June 4, 1918. Appeal, No. 339, Jan. T., 1917, by Samuel E. Taylor, Trustee, from decree of O. C. Fay-ette County, June T., 1916, No. 64, dismissing excep-tions to adjudication, in Estate of Samuel Thompson, Deceased. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Exceptions to adjudication. Before WORK, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Samuel E. Tay-lor, trustee, appealed.

*Errors assigned* were in dismissing exceptions.

*W. J. Sturgis,* with him *S. J. Morrow,* for appellant. —The dividend was payable in cash and did not purport to be a stock dividend and could not have been for want of power in the corporation to declare a stock dividend: Delano v. Butler, 118 U. S. 634; McFarlin v. First Natl. Bank of Kansas City, Kans., 68 Fed. 868, 872; Scott v. Latimer, 89 Fed. 843, 848; Cockrill v. Abeles, 86 Fed. 505.

The measure of the petitioner's right is determined by the will: Moss's App., 83 Pa. 264; Earp's App., 28 Pa. 368; Wiltbank's App., 64 Pa. 256; Smith's Est., 140 Pa. 344; Boyer's App., 224 Pa. 144; Stokes' Est., 240 Pa. 277.

*H. S. Dumbauld,* with him *C. F. Kefover,* for appellee,
cited: Sloan's Est., 258 Pa. 368; Boyer's App., 224 Pa.
144.

OPINION BY MR. JUSTICE SIMPSON, July 17, 1918:

By the will of Samuel Thompson he directed that his
bank stocks should not be sold, but should be held by
his trustee, with power to collect the dividends, to pay
a certain annuity thereout, and the balance to his wife,
during her lifetime, and thereafter to his three sons for
life, and after their death to their issue, with cross re-
mainders if any of the sons should die leaving no issue,
and upon the death of the last survivor of the sons, to
divide said stocks among their then surviving lawful
issue, share and share alike, and in default thereof to
divide it among testator's next of kin according to law.

The widow is dead, but the three sons are still alive.

One of said national banks declared a special dividend
of $150 per share, and on the same day voted to increase
its capital stock from $200,000 to $500,000, giving to
each stockholder the privilege of subscribing to a propor-
tionate part of the new stock at its par of $100 per share.
The dividend thus declared was of exactly the amount
necessary to be paid to receive the proportionate part of
the new stock, and was payable on the same day that
the subscription to the new stock was to be paid. At
testator's death the stock had a book value of $300.54
per share; at the time the dividend was declared its
book value was $872.18 per share; and after the pay-
ment of the dividend and the increase of the capital,
each share of the increased capital had a book value of
$348.87. On the day the dividend was payable the bank
sent to the trustee a check for the amount thereof, to-
gether with a letter stating that the dividend check
might be endorsed and returned in payment of the shares
to which the estate was entitled, instead of sending an-
other check to pay for the new stock. The trustee re-
ceived the special dividend and subscribed for and re-
ceived 82½ additional shares. One of the sons, the ap-

pellee, declined to receive one-third of the special dividend in cash, and asked for a like proportion of the 82½ shares instead. The trustee refused to comply with his request.

Appellee thereupon filed a petition in the court below, setting forth the above facts; averring that in legal effect the dividend was a stock dividend, and that the only reason it was not directly so declared was because the national banking laws did not allow stock dividends; and prayed that the trustee be required to transfer the 27½ shares to him. The trustee answered admitting the facts, but denied that the allotment was a stock dividend and averred that the bank had no power to declare a stock dividend. He admitted receiving the dividend, but denied that the son was entitled to receive the new stock in lieu thereof, and averred that he subscribed therefor with the consent of the sons, that the right to subscribe was for the benefit of the trust, and that he paid in cash for the new stock.

Testimony was taken and the court below found the facts as averred in the petition, with some others which need not be considered in disposing of the case, and decreed in favor of petitioner. Exceptions were filed thereto, which were dismissed, a final decree entered, and this appeal taken by the trustee. The question to be answered is: What was the substance and effect of the plan adopted by the bank? Upon that we are not left in doubt.

The course pursued was doubtless taken because the national banking laws permit of a cash dividend only. It is more than likely that, except for those provisions, the usual method of declaring a stock dividend would have been pursued. But those laws play no part in determining what are the relative rights of life tenants and remaindermen of stock held in trust. They are to be settled solely by what the will says: Boyer's App., 224 Pa. 144. It is clear that testator intended the remaindermen should have only the corpus of the estate

he left in trust, and that all dividends should go to the life tenants. It is true that profits realized are not dividends until declared by the proper officials of the corporation, but distribution of profits, however made, are dividends, and the form of the distribution is immaterial.

A trustee has no right to take sides as between the life tenants and remaindermen. If he has an election of taking one of several courses, he must take, if possible, that which will not benefit one at the expense of the other. In the present instance three possible courses were open to him. (1st.) To sell the option to subscribe. Had he done so he would have realized $20,487.22 in addition to the cash dividend of $8,750, the life tenants would have received both sums and the remaindermen's interest would have remained intact. (2d.) To refuse to exercise the option. In that event the bank could have sold the shares, received the great profit derived therefrom, and it would have ultimately been distributed as dividends to these life tenants and the other stockholders of the bank. By that course the remaindermen's interest would have remained intact, and the life tenants would have received more than the $8,750, though less than if the option had been sold. This would probably have resulted in surcharging the trustee in a sum sufficient to make up to the life tenants the $20,487.22 they would have received from a sale of the option. (3rd.) To subscribe for the stock and pay for it with exactly the sum received as a special dividend. It is immaterial whether the check for the dividend paid for the subscription, or was deposited in bank and a new one for a like amount used in paying for the dividend. If the new stock thus received is distributed to the life tenants, still the remaindermen's interest will remain intact, and the life tenants get in value exactly what they would have received from a sale of the option.

It is clear, therefore, that if the decree below is affirmed, the remaindermen are unhurt, and the life ten-

ants benefited to exactly the extent they would have been had any other course been pursued than that which was taken.  It is not possible to understand how anything could be more equitable; and, as the Orphans' Court acts as a court of equity within the circle of its jurisdiction, and as on an appeal therefrom we are required by Sec. 2 of the Act of 16th June, 1836, P. L. 683, to decree according to justice and equity,

The decree is affirmed and the appeal dismissed at the costs of the appellant.