PEOPLES TRUST COMPANY OF BERGEN COUNTY, Executor of the Estate of Dora Plume, Deceased

v.

UNITED STATES of America, Appellant.

No. 19032.

United States Court of Appeals, Third Circuit.

Argued April 5, 1971.

Decided June 9, 1971.

Michael L. Paup, Dept. of Justice—Tax Div., Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Attys., Dept. of Justice, Washington, D. C., Frederick B. Lacey, U. S. Atty., on the brief), for appellant.

Marie L. Garibaldi, Riker, Danzig, Scherer & Brown, Newark, N. J. (Alvin Weiss, Newark, N. J., on the brief), for appellee.

Before GANEY, VAN DUSEN and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

The United States appeals from a judgment of the district court in favor of a taxpayer in an action for a refund. The plaintiff-taxpayer is the corporate executor of the estate of Dora Plume. Dora Plume died on May 5, 1964, survived by her husband. Her executor filed an estate tax return claiming a charitable deduction of $273,231.99, which it claimed was the value of a charitable remainder in an *inter vivos* trust which Dora Plume had executed on June 9, 1960. Her will poured her residuary estate into this trust. The Commissioner of Internal Revenue disallowed the claimed charitable deduction

and assessed a deficiency in estate tax of $54,207.03, plus interest. The taxpayer paid the deficiency, filed timely refund claims for tax and interest and brought suit for a refund. The United States moved for summary judgment, which was denied, and the district court entered summary judgment in favor of the plaintiff. 311 F.Supp. 1197.

The June 9, 1960, *inter vivos* trust named the settlor as trustee for life and reserved to her a life income. It provided, for purposes herein relevant, that upon her death the successor trustee should pay the income to settlor's husband for his life, and upon his death should pay the corpus to certain named charities, each of which qualifies as a charitable recipient under Section 2055 of the Internal Revenue Code of 1954. 26 U.S.C. § 2055 (1964). The trust instrument provided that the trustee could pay or expend for the benefit of her husband "such part or parts or all of the principal of the Trust Estate as it shall judge to be necessary, in its discretion, to provide adequately for the said husband of the Settlor and for his support, maintenance, health and needs."

The United States contends that the value of the charitable remainder is unascertainable and hence not deductible[1] because of certain administrative provisions in the trust instrument which would permit the trustee to divert the corpus of the charitable remainder to the noncharitable life beneficiary. These administrative provisions are:

> "[Article] 9. Capital gain dividends derived from mutual fund investments shall be considered to be income and shall be paid to the then income beneficiary in the same manner as general income of the Trust Estate.

> "[Article] 10. In addition to all other powers granted to the Trustee by law, the Trustee shall have the following specific powers:

> \* \* \* \* \* \*

> 13. To retain, sell, invest and reinvest any or all of the Trust Estate in any real estate, mortgages, stocks, bonds or securities of recognized investment rating, which the Trustee in her discretion shall deem wise, necessary or expedient, not necessarily confining herself to legal investments.

> \* \* \* \* \* \*

> F. To do all acts which the Trustee shall deem advisable without seeking the aid of any court, even though such act may not be appropriate for fiduciaries under any statutory or other rule of law or court, but for this power."

The appellant does not contend in this appeal that the dispositive provisions of the trust, including the power to invade corpus to provide adequately for the support, maintenance, health and needs of the decedent settlor's husband, render the charitable remainder unascertainable.[2] Rather, it contends that the administrative power to invest in mutual funds coupled with the administrative direction that mutual fund capital gains distributions shall be treated as income gives to the trustee the uncontrolled power to divert corpus from the remainder interest to the life interest. This occurs, appellant urges, because the shareholder of a mutual fund owns a proportionate interest in the fund's undivided aggregate assets. What he pays for his share is determined by that asset value on the date of purchase. That price reflects unrealized capital appreciation of the fund holdings. When the

---

1. The Treasury Regulations allow a deduction from a decedent's gross estate of the value of a charitable remainder interest only if such interest is presently ascertainable. Treas.Reg. § 20.2055–2 (1958).

2. See Ithaca Trust Co. v. United States, 279 U.S. 151, 49 S.Ct. 291, 73 L.Ed. 647 (1929). *Cf.* Henslee v. Union Planters National Bank Trust Co., 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949); Merchants Nat. Bank v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943); Peoples Trust Company of Bergen County v. United States, 412 F.2d 1156 (3 Cir. 1969); Zentmayer's Estate v. Commissioner of Internal Revenue, 336 F.2d 488 (3 Cir. 1964).

fund subsequently realizes gain on such appreciation and distributes all or part of the realized gain the effect is a partial return of the purchase price which, if treated as income, depletes corpus.

In an economic sense there is no distinction between the purchase of stock in any corporation having appreciated but unsold assets and the purchase of stock in a mutual fund having such assets. If in the former case the corporation should realize on the appreciated asset, that realization, net after payment of the capital gains tax, would be added to earned surplus and would be available for dividends. N.J.Rev.Stat. § 14A:7-14 (1969); National Newark & Essex Banking Co. v. Durant Motor Co., 124 N.J.Eq. 213, 1 A.2d 316 (Ch.1938), aff'd 125 N.J.Eq. 435, 5 A.2d 767 (E. & A. 1939). Such dividends, received as trust income, would theoretically have the same effect on trust corpus as capital gains distributions. Indeed the purchase price of stock of any corporation may at any given time reflect earnings which have not yet been but may in the future be declared as dividends. To the extent that such earned income is reflected in the purchase price the same theoretical effect on corpus occurs when a dividend is later declared and received as trust income. The appellant does not contend that either possibility makes a charitable remainder unascertainable. Rather, it contends that capital gains distributions of mutual funds present a unique problem because under the governing provisions of the Internal Revenue Code there is a strong incentive on the part of fund managers to pay out rather than reinvest realized capital gains.[3] Thus, the appellant argues, investment in mutual funds and the treatment as income of capital gain distributions from such funds, presents to the trustee a unique opportunity to increase distributions to a life beneficiary at the expense of a remainderman.

In response appellee contends, (1) that the court should continue to recognize the distinction, for the purpose of determining the ascertainability of a charitable remainder, between dispositive and administrative provisions in a trust instrument; (2) that the trust instrument reflects no intention on the part of the decedent settlor to favor the life beneficiary over the charitable remainderman; and (3) that the New Jersey law applicable to the trust provides sufficient control over a trustee's exercise of discretion that the possibility of the diversions conjured up by the appellant does not really exist.

■ Appellee's first contention, that we should look only at dispositive and not at administrative provisions, is foreclosed by this court's decision in Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3 Cir. 1971). There we held that administrative powers could give a trustee such broad discretion to select investments and to allocate receipts between income and corpus that the charitable remainder would become unascertainable. The *Stewart* trust instrument was governed by New York law, which we held did not impose any fixed and ascertainable standard to control the conduct of the trustee under its broad language. If in the instant case the trust instrument, construed as it would be in New Jersey, vested the trustee with powers to make significant diversions from corpus, and if that power were in no way limited by the New Jersey law, the *Stewart* case would control.

It was formerly the position of the Commissioner that a charitable remainder was ascertainable whether or not the dividends representing realized capital gains of mutual funds are distributed as income to the life beneficiary or added to the corpus. Rev.Rul. 55-620, 1955-2 Cum.Bull. 56. In 1960 the Commissioner changed his position, revoking Reve-

3. To the extent that a regulated investment company distributes capital gains income it thereby avoids corporate tax liability and passes on to its shareholders advantageously taxed long term capital gains. 26 U.S.C. § 852(b) (3) (1964).

nue Ruling 55–620. His new position was that if the trust instrument provided or the applicable law permitted the treatment of mutual fund capital gains distributions as income payable to the life beneficiary the remainder became unascertainable. Rev.Rul. 60–385, 1960–2 Cum.Bull. 77.

At the time the trust instrument was executed, Revenue Ruling 55–620 was in effect. The decedent and her husband, in the spring of 1960, discussed with their attorney an estate plan whereby each of them would create *inter vivos* trusts leaving a life estate to the other, then to their only child, and the corpus to charitable remaindermen. The details were left to the scrivener, and there was no discussion of the provision with respect to mutual fund capital gain dividends. That provision was a standard administrative clause then in general use in that attorney's office. Decedent and her husband each had separate estates ample for their respective needs in the modest manner in which they lived. Their daughter predeceased them.

■■ The decedent's trust remained revocable until her death. Before her death, while she was ill, on April 21, 1964, the settlor amended the trust to name the present corporate trustee. Between January 1, 1961, the effective date of Revenue Ruling 60–385, and the date of her death, the decedent could have but did not change the provisions of the trust to conform to the Commissioner's new position. The provisions of Revenue Ruling 60–385 were not called to her attention. Since the Commissioner's new position never came to her attention no inference can be drawn respecting her dispositive intention from her failure to make a change. Revenue Ruling 60–385 is not binding as a statute or regulation. United States v. Bennett, 186 F.2d 407 (5 Cir. 1951); Aluminum Co. of America v. United States, 123 F.2d 615 (3 Cir. 1941).

■ The applicable Treasury Regulation, Section 20.2055–2(b) provides in part:

"If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power."

Subsection (a) of the same regulation provides that a charitable remainder is deductible only insofar as presently ascertainable, and refers to the method of calculation of present value. There is no question that the value of the charitable remainder was, at the time of decedent's death, ascertainable by reference to her husband's life expectancy and likely needs. The language of the Regulation quoted above is in subsection (b), captioned "Transfers subject to a condition or a power." Under the Regulation, then, the issue is whether the trustee has a power to divert corpus from the charities to the life tenant. It is not whether as a result of the trustee's investment policies the trust corpus will at the end of the life estate be greater or less than when it vested. That risk is inherent in any trust arrangement which postpones distribution, and it does not for purposes of the deduction make a charitable remainder unascertainable. Gardiner v. United States, 69–2 USTC ¶ 12.628 (D.Ariz. 1969); Estate of Phyllis W. McGillicuddy, 54 T.C. 315 (1970); William T. Grant, 48 T.C. 606 (1967).

■ We must, therefore, look to the trust instrument as it would be looked at by a New Jersey court for any such power to divert corpus. Appellant contends that a New Jersey court would find in it (1) an intention that the trustee prefer the life beneficiary, or (2) at least the absence of any legal inhibition on the trustee if it decided to do so. The intention that the trustee prefer the life beneficiary is inferred principally

from the authorization in Article 9 of the trust to treat capital gain distributions from mutual funds as income.

■ In the context of this trust the inclusion of Article 9 is at best neutral on the issue of the settlor's intent. Because of the tax advantages referred to hereinabove many mutual funds pursue a policy of investing in securities which will result in capital appreciation rather than in income to the fund. Investment in such funds, if the capital gains distributions were to be treated as additions to corpus, could have the effect of depriving the life beneficiary of income which other investments might have produced. Thus to the extent that the scrivener's handiwork actually reflects the settlor's intention, it reflects as much an intention to protect the life beneficiary from reduction of income for the benefit of the remainderman as an intention to prefer the former over the latter. Rather than creating a power to divert from one class to another the language is consistent with the neutral role which in New Jersey is required of trustees for successive interests. See, e. g., In re Koretsky's Estate, 8 N.J. 506, 86 A.2d 238 (1951); Pennsylvania Co. For Lives & Granting Annuities v. Gillmore, 137 N.J.Eq. 51, 43 A.2d 667 (Ch.1945).

■■ Of course the dispositive provisions of the trust authorize corpus invasions to provide for the support, maintenance and health needs of decedent's husband. That standard was found by the district court to be objectively determinable under New Jersey law, and the appellant does not on appeal contend that this finding is in error. It contends, however, that the courts of New Jersey would permit diversion to decedent's husband of sums beyond the objectively determinable standard. We do not agree.

"A fiduciary is under a duty to act impartially as among the several beneficiaries or creditors of an estate or trust, and not to favor one over another, whether, as in the case of beneficiaries, their interests are concurrent or successive. Where the trustee is directed to pay income to a beneficiary for life with the corpus to another, he is under a duty to fairly adjust their conflicting investment interests." Clapp, New Jersey Practice, Wills & Administration (3d ed. 1962) § 994.

Even where the provisions of a trust agreement clothe the actions of a New Jersey fiduciary with apparent finality he must stay within the bounds of a reasonable judgment in choosing between remaindermen and present beneficiaries. Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 38, 231 A.2d 800, 805 (1967). Absent a clear expression of intention by the settlor to the contrary [4] it is the duty of New Jersey trustees to deal impartially between successive beneficiaries. In re Koretsky's Estate, *supra*. In Pennsylvania Co. For Lives & Granting Annuities v. Gillmore, *supra*, 137 N.J.Eq. at 58, 43 A.2d at 672, the court expressed the trustee's duty thus:

"The question before the Court must therefore be decided on the legal aspects and the question is, what is the duty of the trustee of this residuary trust? That duty, as laid down in the Restatement of the Law of Trusts, is 'to deal impartially' as between the successive beneficiaries, and to act 'with due regard to their respective interests.' To accomplish this result where, as in this case, the trustee is directed to pay income for life to one set of beneficiaries and at the end of that period to pay over the principal to the remaindermen, 'the trustee is under a duty' to the life tenants 'to take care not merely to preserve the trust property but to make it productive so that a reasonable income will be available for the life tenants,' and it is under a duty to the remaindermen to 'take care to preserve the trust property for them.' The trustee 'is not under a duty to the life tenants

---

4. Compare In re Estate of Conway, 50 N.J. 525, 236 A.2d 841 (1937).

to endanger the safety of the principal in order to produce a larger income,' but he is under a duty 'not to sacrifice income for the purpose of increasing the value of the principal.' "

The quotes within the quote are from Section 232 of the Restatement of Trusts (1935). The rule set forth is the settled law of New Jersey, and it is inconceivable that the courts of that state would permit a New Jersey trustee to pursue an investment policy designed to divert corpus from the remainderman to a life beneficiary. E. g., Bliss v. Bliss, 126 N.J.Eq. 308, 8 A.2d 705 (Ch.1939). Particularly is this true of charitable remainders, for the protection of which the Attorney General of New Jersey is charged with special responsibilities. N. J.R.R. 4:28–4.

The provision in the trust giving the trustee power to invade corpus to meet the life tenant's needs does not point to a different result. In the exercise of that dispositive provision a New Jersey trustee still must act as a fiduciary. The exercise of that power is limited by the life tenant's separate income. Sibson v. First National Bank and Trust Co. of Paulsboro, 64 N.J.Super. 225, 165 A.2d 800 (App.Div.1960). A New Jersey court would not permit a trustee to circumvent his fiduciary duty to determine the life tenant's objective need by the subterfuge of making investments which would produce income and deplete corpus. By the same token a New Jersey court would not permit an investment policy which would eliminate a reasonable return in favor of capital appreciation for the remainderman. See Commercial Trust Co. v. Barnard, 27 N. J. 332, 142 A.2d 865 (1958).

Article 9 of the decedent's trust is consistent with this neutral policy.

The trustee may invest in securities in which the incremental growth occurs from capital appreciation rather than from income. If it does so, however, it must maintain a balance between the interests of the successive beneficiaries by allotting to the life beneficiary a part of the current incremental growth. If the trustee goes too far in that direction it will violate its fiduciary duty to the remainderman, and the courts will intervene. *Cf.* Briel v. Moody, 77 N.J.Super. 306, 186 A.2d 314 (Ch.1962). Compare N.J.Rev.Stat. § 3A:14A–5(A)(d), enacted in 1964 in order to comply with the Commissioner's view expressed in Revenue Ruling 60–385.

We are aware that the Fifth Circuit, in two cases arising under Florida law, has accepted much of the position advanced here by the appellant with respect to clauses similar to Article 9. Florida Bank at Lakeland v. United States, 443 F.2d 467 (5 Cir. 1971); Miami Beach First National Bank v. United States, 443 F.2d 475 (5 Cir. 1971). The trust provisions in those cases are different than here, and the law of Florida, as set forth in those opinions, apparently differs from that of New Jersey.

Both the provisions of the trust instrument and the law of New Jersey present quite a different situation with respect to the trustee's powers than was presented in Estate of Stewart v. Commissioner of Internal Revenue, *supra.* Because there is not in this trust, as it would be construed in New Jersey, a power to divert the ascertainable corpus from its charitable purpose, Section 20.-2055–2(b), the deduction should have been allowed. The judgment of the district court will be affirmed.