**PROVIDENT NATIONAL BANK (formerly Provident Tradesmens Bank & Trust Company), et al.**

v.

**UNITED STATES of America.**

Civ. A. No. 69–1237.

United States District Court, E. D. Pennsylvania.

Feb. 2, 1973.

Herbert G. Schick, MacCoy, Evans & Lewis, Philadelphia, Pa., for plaintiffs.

David A. Wilson, Jr., Thomas R. Jones, Stephen T. Lyons, Attys., Dept. of Justice, Washington, D. C., Scott P. Crampton, Asst. Atty. Gen., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The issue before the Court arises under Section 2055 of the Internal Revenue Code of 1954 and the Regulations relating thereto.[1]

Jurisdiction of the Court arises under Section 1346(a)(1) of Title 28 U.S.C.

The dispute involved herein is submitted to the Court as a case stated and arises out of the following stipulation of facts:

Plaintiffs, Provident National Bank, Madora Ethel Doney, Eleanor D. Bryce and William Leonard Doney, are executors of the last will of Charles F. Leonard, Deceased. Plaintiff, Provident National Bank, is a banking corporation organized under the laws of the United States, with its principal office at 1632 Chestnut Street, Philadelphia, Pennsylvania, 19103, and plaintiffs, Madora Ethel Doney, Eleanor D. Bryce and William Leonard Doney, are citizens of the United States.

Charles F. Leonard died on August 6, 1961, a resident of 648 Manoa Road, Havertown, Delaware County, Pennsylvania, leaving a last will which was duly admitted to probate by the Register of Wills of Delaware County, Pennsylvania, to which jurisdiction in that behalf belonged, and on August 21, 1961 Letters

---

1. Section 201(e) of the Tax Reform Act of 1969, which requires that a trust pay either a fixed dollar amount or 5 per cent of the net fair market value of the trust assets to the life beneficiary in order that the value of the charitable remainder be deductible is not applicable here because testator herein died prior to the date of enactment of the bill. P.L. 91–172, Title II, § 201(e) (1), Dec. 30, 1969, 83 Stat. 562; 26 U.S.C. § 664(d).

Testamentary were issued by the Register of Wills to plaintiffs, Provident National Bank, Madora Ethel Doney, Eleanor D. Bryce and William Leonard Doney, who duly qualified as executors of the said last will and at the present time continue to act as such.

Dr. Leonard's will, inter alia, disposed of the residue by creating a trust therefor to pay the income to certain life beneficiaries and after the death of the survivor of the life beneficiaries then in trust to pay the net income to Hahnemann Medical College and Hospital of Philadelphia, Pennsylvania, for use in cancer research. If Hahnemann ceased its cancer research facilities then the net income was to be given to Jefferson Medical College Hospital, Philadelphia, Pennsylvania, for the same purpose. If either Hospital ceased their cancer research programs, then the net income was to be paid to such an institution which still carries on cancer research. If a cure for cancer is found then the institution then receiving the net income shall use it for research in other areas of human disease.

In addition, the will set forth certain administrative provisions in which the following were included:

"9. Powers of Executors and Trustees

In addition to powers granted by law, my executors and trustees shall have the following powers exercisable at their discretion without court approval:

. . . (d) *Investments*: To retain and invest in any form of property without being limited to legal investments, [except]: No investments may be made (1) in a fractional interest in any mortgage, or (2) in any other mortgage except in first mortgages upon small dwelling houses which do not exceed fifty per cent of the conservative appraised value of the mortgaged premises . . .. However, it is not my intent to prohibit investments in mortgage bonds of railroads, public utilities or other industrial corporations secured on their assets.

. . . (f) *Principal and Income*: To allocate any property received or charge incurred to principal or income or partly to each as my corporate executor or trustee from time to time thinks proper, regardless of whether such allocation follows the usual rules of trust accounting.

. . . (i) *Distributions of Principal*: To distribute from time to time to or for the benefit of a beneficiary receiving income hereunder such amount of the principal of my residuary estate as my corporate executor or trustee considers advisable for the medical, surgical, x-ray and hospital expenses incurred during the illness of any such beneficiary, charging such payment against the general principal or in such other manner as my corporate executor or trustee thinks fair, provided that the aggregate amount of such payments to all beneficiaries shall not exceed ten per cent of my adjusted gross estate for federal estate tax purposes, as defined by the Internal Revenue Code as of the date of this will. Such principal payments shall be made for hospital treatment only and not for home or office treatment."

On November 5, 1962, plaintiffs, as executors, duly executed and filed the United States Estate Tax Return of the estate with the District Director of Internal Revenue at Philadelphia, Pennsylvania, and paid the estate tax shown to be due thereon in the amount of $132,705.78. The Commissioner of Internal Revenue assessed an additional federal estate tax of $31,371.27 against the plaintiffs as executors of the estate, in addition to the tax of $132,705.78 shown on the return and on or about January 25, 1966 plaintiffs paid to the District Director of Internal Revenue at Philadelphia, Pennsylvania $31,371.27 plus interest in the amount of $6,001.79, for a total payment of $37,373.06. The assessment of additional estate tax by

the Commissioner of Internal Revenue was based upon his determination that decedent's taxable estate was $599,280.79. Plaintiffs paid the estate tax shown to be due thereon after allowable credit for state death taxes of $12,315.11, in the amount of $132,705.78, to the Internal Revenue Service at Philadelphia, Pennsylvania, which reported a taxable estate of $497,877.77.

In the determination of the taxable estate, the Commissioner of Internal Revenue refused to allow a charitable deduction in the amount of $116,122.62 for a remainder interest payable to Hahnemann Medical College and Hospital of Philadelphia, Pennsylvania and Jefferson Medical College Hospital of Philadelphia, Pennsylvania.

On September 16, 1966, plaintiffs timely filed with the District Director of Internal Revenue at Philadelphia a claim for a refund of estate tax and interest in the amount of $37,373.06 and therein demanded the refund of such amount, together with interest as provided by law. On March 17, 1967, the District Director disallowed in full the claim for refund filed September 16, 1966 and notified the plaintiffs to that effect.

The sole issue confronting the Court is whether or not paragraph 9(f) of Decedent's will which grants the trustees the power to allocate any property received or charge incurred to principal or income or partly to each as they from time to time think proper, regardless of whether such allocation follows the usual rules of trust accounting, is tantamount to a power to invade corpus which is not limited by an ascertainable standard and which would render the value of the charitable remainder unascertainable and therefore not deductible from decedent's gross estate under Section 2055 of the Internal Revenue Code.

Section 2055 of the Internal Revenue Code of 1954 allows a deduction from taxpayer's gross estate for bequests to qualifying charities. The bequest can be in the form of a remainder and a de-duction is allowed if the value of the remainder interest is presently ascertainable. See Treas.Regs. 20.2055–2(a). The Supreme Court of the United States has stated that in order for a charitable remainder to be presently ascertainable:

. . . [T]he conditions on which the extent of invasion of the corpus depends [must be] fixed by reference to some readily ascertainable and reliably predictable facts . . . . And in these cases, the taxpayer has the burden of establishing that the amounts which will either be spent by the private beneficiary or reach the charity are thus accurately calculable. Merchants Bank v. Commissioner, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943).

■ ■ A trustee's power to allocate between principal and income in his discretion may rise to a power to invade corpus if by the terms of the instrument creating such power the trustee is not limited by some objective standard. Also, if local law would permit the trustee to exercise his discretion in such a way as to permit the erosion of the trust corpus, the charitable remainder would not be presently ascertainable under the present state of the law. Compare Estate of Stewart v. Commissioner, 436 F.2d 1281 (3rd Cir., 1971) with Peoples Trust Company of Bergen County v. United States, 444 F.2d 193 (3rd Cir., 1971). The question to be resolved is not what the trustee is likely to do but what it has the power to do. The mere existence of the power to erode corpus is sufficient to avoid the deduction, see, Zentmayer's Estate v. Commissioner of Internal Revenue, 336 F.2d 488 (3rd Cir., 1964) because the remainderman could not contest a given allocation which depletes corpus in favor of the life tenant. Therefore, the Court must first determine whether or not testator intended to restrict allocations by some ascertainable standard found therein. Second, if testator's intent is unclear then the Court must look to see if local law would restrict the exercise of the trustee's discretion so as not to allow it

to favor the life tenants over the charitable remainder. Both of these questions must be resolved by the application of local law.

## TESTATOR'S INTENT

██ Testator's intent to favor the life beneficiaries over the charitable remainder, if clear, will control the trustee in allocating between principal and income notwithstanding a rule of law to the contrary. The Revised Principal and Income Act of 1947, 20 P.S. § 3470.-2, governs the apportionment of receipts and expenses between tenants and remaindermen in all cases except, for our purposes, where the person establishing the principal himself either directs the manner of apportionment of receipts and expenses or grants discretion to the trustee to do so. If the grant is not otherwise contrary to law, then it controls. Because the testator here granted his corporate trustee full discretion to allocate between principal and income, the Act does not apply.

The specific administrative provision in testator's will granting the trustee the power to allocate between principal and income regardless of whether the allocation follows the usual rules of trust accounting, by itself is a full grant of power to allocate as the trustee "thinks proper." It does not, however, indicate a desire to favor the life beneficiaries over the charitable remainder. The government argues that this power by itself is sufficient to render the entire remainder unascertainable because if it chose to do so, the trustee could favor the life beneficiaries by investing some of the corpus in wasting assets such as depletable minerals or leaseholds or where the trust property is bought and sold, by allocating capital gains to income and capital losses to principal. Were this administrative provision alone controlling, then the trustee would be permitted to erode the principal in favor of the life beneficiaries.

██ Under Pennsylvania law, the intent gleaned from the instrument as a whole will control the trustee and a court evaluating that trustee's actions, even where specific provisions therein seemingly conflict with testator's general purpose. See, Walker Estate, 376 Pa. 16, 101 A.2d 652 (1954). In perusing the four corners of this instrument,. it is important to note that at no time does testator indicate a desire to favor his life beneficiaries over the charitable remainder. Indeed, the only direct power given to the trustee to invade principal for the benefit of the life beneficiaries is in item 9(i), and the substantial restrictions found in that provision would tend to favor the charitable remainder. It also appears from the language used in item 9(i) that testator, who was a medical practitioner, gave more thought to its inclusion in his will than he did to the language in 9(f) which is a standard administrative power designed to facilitate trust administration generally. Putting these two provisions together, there are two possible conclusions. The first is that testator was concerned to some degree about the preservation of the principal, and he did not intend to favor either the life tenants or the charitable remainder, or second, that his intent is unclear. Taking the will as a whole, this Court is of the opinion that testator's intent is not clear and that the will itself does not set forth an ascertainable standard against which a court could reliably measure the trustee's allocation decisions under the trust.

## LOCAL LAW

Because the will contains no ascertainable standard by which the exercise of the trustee's discretion can be measured, the Court must determine if such a standard exists under Pennsylvania law. To do this, we must examine the pertinent Pennsylvania cases which have dealt with the trustee's discretion to allocate principal and income in order to determine what restrictions, if any, the Supreme Court of Pennsylvania would place on the same trustee in the same situation.

No Supreme Court of Pennsylvania decision can be found which disposes of the issue raised here. Several District and County of Pennsylvania decisions have been cited by both parties as being in point, and we will give proper regard to the opinions in those cases as they apply here. See, Commissioner v. Estate of Bosch, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

Plaintiff relies on Thompson's Estate, 262 Pa. 278, 105 A. 273 (1918) as support for the proposition that a trustee in Pennsylvania could not allocate income and principal so as to benefit one party in interest at the expense of the other. In that case the trustee elected to subscribe to what amounted to a stock dividend rather than accept a special cash dividend declared by a certain national bank. One of the life tenants brought suit to compel transfer of his proportionate interest in bank shares rather than in cash, but the trustee refused to make the transfer. The life tenant brought suit to compel the transfer, and the lower court found in his favor stating that the dividend was in effect a stock dividend. The Supreme Court of Pennsylvania affirmed the lower court's decision using the following language:

> A trustee has no right to take sides as between the life tenants and remaindermen. If he has an election of taking one of several courses, he must take, if possible, that which will not benefit one at the expense of the other. Thompson's Estate, 262 Pa. 278 at 281, 105 A. 273 at 274.

This statement is admittedly a somewhat general limitation of a trustee's discretion when dealing between successive beneficiaries at any level.

The Pennsylvania Supreme Court has also enunciated a general standard to which the trustee must adhere in administering the trust which is that he exercise the same amount of diligence that a man of ordinary prudence could be expected to exercise in the care of his own property under the same circumstances. See, Lerch's Estate, 399 Pa. 59, 159 A.2d 506 (1960); Musser's Estate, 341 Pa. 1, 17 A.2d 411 (1941).

The Court of Appeals for the Third Circuit in Estate of Stewart v. Commissioner, 436 F.2d 1281 (3rd Cir., 1971) found that the New York statutory rule [2] which specifically allows a settlor to grant his trustee the power to allocate between principal and income in subsection two of the statute, would control notwithstanding the directive in subsection one requiring the trustee to administer the trust with due respect to the interests of all beneficiaries and also to exercise ordinary and prudent discretion when dealing with the interests of both parties. The Third Circuit held that the provision in the will granting full discretion to the trustee to allocate between principal and income would not be limited by an ascertainable standard because of the New York statute permitting such a grant.

The Pennsylvania Revised Principal and Income Act allows the settlor to grant full discretion to the trustee to allocate between principal and income and such grant is valid and will control "where not otherwise contrary to law." 20 P.S. § 3470.2. The inclusion of the phrase "where not otherwise contrary to law" by the Pennsylvania Legislature is important in that it retains existing legal restrictions presently applicable to trustees generally, whereas the New York law specifically permits those restrictions to be written out by a testator using appropriate language.[3]

2. Estates, Powers and Trusts Law, McKinney's Consol.Laws, c. 17–b, § 11–2.1 (a).

3. Estates, Powers and Trusts Law, McKinney's Consol.Laws, c. 17–b, § 11–2.1 (a) (2):
   "(2) If the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference that the trustee has or has not improperly exercised such discretion arises from the fact that the trustee has made an allocation contrary to the provisions of this section."

In Peoples Trust Company of Bergen County v. United States, 444 F.2d 193 (3rd Cir., 1971), the Third Circuit was confronted with the question of whether or not a provision in settlor's will directing that capital gain dividends derived from mutual fund investments be treated as income and payable to the income beneficiary was restricted by New Jersey law so as to obviate the possibility that the trustee would erode corpus in favor of the life tenant. The Court there held that under New Jersey law as enunciated in several New Jersey Supreme Court decisions, the trustee would not be permitted to divert corpus to the life tenant to the detriment of the charitable remainder and allowed the deduction to stand. The New Jersey cases relied on by the Court in the Peoples Trust opinion did not specifically deal with the issue presented to the Third Circuit in that case, but were general statements of law directing the New Jersey trustee to deal impartially with all beneficiaries and to exercise reasonable judgment when acting on behalf of the trust. See, In re Koretsky's Estate, 8 N.J. 506, 86 A.2d 238 (1951); Russell v. Princeton Laboratories, Inc., 50 N.J. 30, 231 A.2d 800 (1967).

The government has directed our attention to one District and County opinion which does tend to support its position that the trustee in Pennsylvania is given great discretion where he is given power to allocate between principal and income. See, Markley Estate, 19 Pa. Dist. & Co.R.2d 143 (1959). The allocation clause adhered to the general rule that the trustee's decision in apportionment matters would only be set aside where there was an abuse of discretion, and found no abuse in apportioning pursuant to the older intact value rule. The Court, however, quoted from 3 Scott on Trusts, § 233.5 which states in part:

> By the terms of the trust the trustee may be empowered to determine what receipts should be treated as income and what receipts as principal or to apportion receipts between income and principal, and may be empowered

to determine what expenditures out of principal or to apportion expenditures between income and principal. Where such a power is conferred upon the trustee, his determination is controlling unless he has abused the discretion conferred upon him. Whether there is an abuse of discretion depends upon the extent of the power conferred upon him. The mere fact that the trustee does not follow the rules which would be applicable if no such power were conferred upon him does not constitute an abuse of discretion. Indeed, the very purpose in conferring the power upon him is to enable him to depart from the usual rules.

In *Markley,* the trustee ad litem argued that the trustee must adhere to the intact value rule even where the power to allocate between principal and income is granted in full. This approach was rejected by the Court as being exactly the kind of rigid rule sought to be avoided by giving such discretion to the trustee pursuant to the Revised Uniform Principal and Income Act. There is no indication that the same court would or would not have allowed the trustee to divert corpus in favor of the life tenant where the testator's intent was unclear. To the same effect see, Parker Estate, 17 Pa.Dist. & Co.R.2d 38 (1958) and Hood Trust, 7 Fid.Rep. 223 (1957).

■■ This Court is of the opinion that the Supreme Court of Pennsylvania would not permit a trustee to erode principal in favor of the life tenants herein pursuant to the rationale set forth in *Thompson's Estate* as well as the requirement that the trustee act with the same degree of diligence that a man of ordinary prudence would be expected to act in caring for his own property. Both rules provide the Pennsylvania Courts with an ascertainable standard with which a trustee's actions can be measured. The Pennsylvania cases go as far as the New Jersey cases relied on in *Peoples Trust* with respect to the restrictions placed on the trustee

in allocating between principal and income. We note also that charities are favored institutions in Pennsylvania and any allocation between principal and income to their detriment under the circumstances here we feel would be suspect.

Therefore, the value of the charitable remainder is presently ascertainable under the views stated above, and plaintiff is entitled to deduct the value thereof from Charles F. Leonard's gross estate.