Joseph A. Cox, S.
The testator was the president and chairman of the board of directors of Berlin & Jones Company, Inc., a domestic corporation incorporated in 1867, which, with its predecessor, had been engaged in the envelope manufacturing business for over 100 years. It was a well-established profitable business enterprise which sold its products to this country’s major business firms, banks, insurance companies and publishing houses. One of the founders of the corporation was Henry C. Berlin, the grandfather of the testator’s widow Katherine S. Dickson. All but approximately 21% of the corporate stock was held, owned or controlled by the decedent and his immediate family. The decedent at the time of his death owned approximately 43% of the stock, his widow approximately 22% of the stock, his son, as trustee under the will of Henry C. Berlin for the benefit of the decedent’s widow Katherine S. Dickson, approximately 14% of the stock and one Charles Segal, approximately 21%.
The testator was actively engaged in the management of the firm and it is apparent from a reading of the will that it was his wish and desire that the management and control of the firm remain in his wife and son. This is borne out by the testator’s direction in article V of his will that the widow’s bequest of 50% of the. adjusted gross estate be made up as far as possible out of the corporate stock and by the provisions of article VI of the will in which he specifically stated that the residuary trust for *680 Ms widow’s life was upon her death to be divided into two parts consisting of 55% and 45% in the following manner:
“ part 1 shall consist of Fifty-five (55%) Per Cent thereof and part 2 shall consist of Forty-Five (45%) Per Cent Thereof.
‘ ‘ I direct that there shall be included in part 1 hereinabove created all or such part of my stock in Berlin & Jones, Inc. not already allocated to my wife, necessary to make up such PART 1 before allocating any other property to such PART 1. The valuation of said stock for this purpose shall be the valuation placed thereon by the Estate Tax Department, United States Collector of Internal Revenue.
“ Should any of the Stock of Berlin & Jones, Inc. be left over after such allocation, I direct that my son thomas dioksoh, jr. shall be permitted to purchase the same for cash at a price valued as above. Should my son not have funds at such time to make such purchase, then I direct that he shall have the right to make such purchase at any subsequent date for the same valuation and substitute the cash therefor.”
Upon the widow’s death “ part 1 ” of the trust remainder was devised and bequeathed to the decedent’s son. “ part 2 ” was continued in further trust for the life and benefit of the decedent’s daughter with the remainder upon her death passing to her issue.
The stipulation of facts and the account reveal that on December 28, 1957, the executors, in conjunction with the widow, sold the corporate assets of Berlin & Jones Company, Inc. for the snm of $955,000; that on January 3,1958 they caused the name' of the corporation to be changed from Berlin & Jones Company, Inc. to Berjo Corporation and that about five months later effected an amendment of the corporate charter which gave to the corporation the authority to engage in the business of buying and selling securities for profit. As an incident to the sale of the corporation assets and prior to its conclusion the board of directors of Berlin & Jones Company, Inc. entered into an agreement with Charles Segal for the purchase of his stock in the corporation for the price of $133 per share. As a result, at the time the sale was consummated the executors and the decedent’s widow controlled almost all the outstanding stock of Berlin & Jones Company, Inc.
After the completion of the aforesaid transactions the estate’s 3,471 shares of Berlin & Jones Company, Inc. stock were exchanged for a like number of shares of Berjo Corporation stock and 2,505 shares of such stock were distributed to the decedent’s widow in satisfaction of her bequest under article V of the decedent’s will. The stock distributed to the widow was *681 valued at $133.99 per share which was the same valuation which had been placed upon the Berlin ■& Jones Company, Inc. stock in the Federal estate tax proceeding. Thereafter, 966 shares of the Berjo Corporation stock then held by the executors were transferred to the trustees. At the time the transfer was made by the executors to themselves as trustees a computation of the value of the Berjo Corporation stock shows that it was worth approximately $163.34 per share and the trustees received it at that valuation. This stock at the time of the transfer to the trust constituted about 46% of the total value of the trust created by the testator under article VI of his will.
Objections to the account have been filed by the decedent’s adopted daughter and by the special guardian appointed by this court to protect the interests of the infant children of the decedent’s adopted daughter. The daughter does not object to the sale of the corporation’s assets, nor does she object to the amount received for such assets, but she does object to the retention by the executors of the 966 shares of Berlin & Jones Company stock after the sale of the corporations’ assets, the exchange of these 966 shares of Berlin & Jones Company stock for Berjo Corporation stock on a share for share basis and the distribution of these shares by the executors to themselves as trustees under article VI of the testator’s will. Although not plainly stated therein, inherent in these objections is the exception taken to the attempt and apparent intention of the executors and trustees to retain for the decedent’s son the option to purchase the Berlin & Jones Company, Inc. stock (now Berjo Corporation stock) which was granted to him under article VI of the decedent’s will.
The special guardian has joined in the objections filed by the daughter, and, in addition, has filed objections of a broader nature in which he asserts that the executors have by their acts nullified the intent of the testator as expressed in his will and have exceeded the authority granted to them by the testator under the will.
The executors and trustees for their part assert that the authority to make the transactions now objected to is contained in the unusually broad discretionary powers conferred upon them in article X of the decedent’s will and that their acts in connection with both the sale of the corporation’s assets and the retention of the stock have preserved the intent of the testator to give to the decedent’s son a greater or perhaps additional benefit under the provisions of article VI of the will.
The facts in a situation as complicated as the one here presented must be judged on their own merits and the court *682 must determinate from those facts whether the acts of the executors have caused a change which nullifies and renders impossible of achievement the carrying out of the testator’s intent as disclosed by a reading of the will (Matter of Westerfield, 278 App. Div. 153, affd. 303 N. Y. 916; Martz v. Guaranty Trust Co., 247 N. Y. 137).
It appears to this court that, despite the testator’s manifested intention that the envelope manufacturing concern known as Berlin & Jones Company, Inc. continue under the management and control of his widow and son, the son Thomas Dickson, Jr. and the Manufacturers Hanover Trust Company, as executors, in conjunction with the decedent’s widow, have completely altered the character and essence of the corporation’s business by changing it from an envelope manufacturing corporation to an investment corporation engaged in the business of buying and selling securities for profit.
The corporation as it is presently constituted in no wise can be compared with and in no way resembles the corporation with which the decedent was dealing at the time he made his will. Nor can it be said that the stock of Berjo Corporation is the same as or in any way resembles the stock of Berlin & Jones Company, Inc. A stockholder in the latter had a share in an active industrial manufacturing organization which had a long record of continuity, achievement and success. A stockholder in the new company owns a share in a corporation which has no history or record of any kind and which in turn owns shares of stock in many .publicly held corporations over which it and its board of directors have little or no direct control. The present corporation neither deals in, buys, sells nor manufactures any products and its growth and success are dependent upon the vagaries of the stock market.
This court cannot equate the testator’s directions and intent with respect to the Berlin & Jones Company stock with the executors’ actions in relation thereto and the testator’s intent to keep the stock of Berlin & Jones Company in the hands and control of his wife and son cannot be said to exist with respect to the stock of Berjo Corporation.
The substance and very heart of the corporation has been altered beyond recognition. As the Court of Appeals, with respect to a much less obvious situation, stated in Mertz v. Guaranty Trust Co. (supra, pp. 141-142): “ Here the investment is radically different. The change of identity has relation not to form only, but to substance. * * * The ancient venture has exposed itself to strange and unexpected hazards. The finding is that there has been a change in the 1 product manufac *683 tured ‘ the marketability of the product ’, 1 the capital structure ’, ‘ the risks and vicissitudes ’ both actual and probable. * * * The dividends to be garnered by fostering the one might be altogether different from those to be garnered by fostering the other.”
The executors being in control of more than one third of the corporate stock before distribution were in a position to block any sale of the corporate assets. (Stock Corporation Law, § 20.) It may be argued that the widow who already owned 22% of the corporate .stock could, after the receipt of her bequest of stock under article V of the decedent’s will, have negotiated the sale of the corporation assets. This may be true but the accounting executors could then have afforded themselves of the protection given to minority stockholders by the provisions of sections 20 and 21 of the Stock Corporation Law.
The executors contend that under the provisions of article X of the will they had the discretionary power to participate in the sale of corporate assets which is complained of by the special guardian. The court does not dispute their capacity to participate in the transaction under the provisions of the will but it does dispute their wisdom in accepting shares of stock which placed them in a position of minority shareholders without control of the investment. They were under a duty as executors and trustees to act for the best interests of .all persons interested in the estate and not solely for the best interests of those most affected by the transaction. The decision of the widow and son, who together now control 85% of the corporate stock, not to remain in the envelope manufacturing business is one that cannot be questioned by the court but the active participation of the executors in that transaction without fully protecting the rights of other persons interested in the estate is very much this court’s affair.
The standards by which trustees are to be judged were clearly set forth in Matter of Hubbell (302 N. Y. 246, 254): “In judging the conduct of trustees, the basic consideration is the fiduciary obligation which they owe to all of the beneficiaries whom they represent. (Cf. Matter of Durston, 297 N. Y. 64, 71-72; Meinhard v. Salmon, 249 N. Y. 458, 464, 468; Carrier v. Carrier, 226 N. Y. 114, 125-126; Munson v. Syracuse G. & C. R. R. Co., 103 N. Y. 58, 73.) ‘ A trustee ’, this court said in Meinhard v. Salmon (supra, 249 N. Y. 458, 464), ‘ is held to something stricter than the morals of the market place. ’ ’ ’
*684 At the present time the widow owns 68% of the Berjo Corporation stock, the son as trustee under the will of Henry C. Berlin, owns 17% of the stock and the trustees under this testator’s will, who are the decedent’s son and the Manufacturers Hanover Trust Company, own 15% of the stock. The decedent’s son and one of the officers of the corporate fiduciary occupy positions as officers and directors of the Berjo Corporation. These then are the facts as they presently exist and it is pertinent to inquire whether the powers given to the executors and the trustees by the testator in article X of the will, which include both the power to retain stock owned by the decedent at the time of his death, whether or not they be “ legal ” investments (art. X, par. [g]) and the power to make investments in “ nonlegal ” investments (art. X, par. [h]) have been properly exercised.
It is the opinion of this court that the continued retention of the Berjo Corporation stock among the trust assets subjects the trust estate to an unnecessary hazard and may constitute an illegal delegation of the trustees’ powers. All that the trustees now have is a minority interest in a corporation controlled by the decedent’s widow. Even though as officers and directors of Berjo 'Corporation they now have a voice in its investment policies they can be divested of even this at any time at the whim of the widow. A change in the board of directors at her direction could place the investment powers with respect to 46% of the trust assets in the hands of persons whose judgment and investment policies could be imprudent and unsound. The fact is that the trustees have surrendered their dominion over a substantial portion of the trust assets.
The proper investment of trust assets requires the exercise of sound judgment and discretion and acts requiring the exercise of judgment and discretion cannot be delegated by trustees to other persons (Cooper v. Illinois Central R. R. Co., 38 App. Div. 22; Allison & Ver Valen Co. v. McNee, 170 Misc. 144; Matter of Palmer, 132 N. Y. S. 2d 311).
The stock of Berjo Corporation is not a registered or listed security such as is permitted for investment by trustees under paragraph m of subdivision 1 of section 21 of the Personal Property Law and, although the testator by the terms of article X of his will freed the executors and trustees from the operation of the statute, they have not been freed from the standards of good judgment and prudence with which all trustees must act (Matter of Hubbell, supra; Meinhard v. Salmon, 249 N. Y. 458; 2 Scott, Trusts, § 187). In addition, the minority stock *685 interest of the trust estate in Berjo Corporation cannot be a readily saleable interest. If at any time it becomes necessary to sell such stock this court believes it would be difficult, if not impossible, to find any purchasers for such stock other than the decedent’s son and widow. For all of these reasons it is the considered judgment of this court that the retention of the stock of Berjo Corporation among the trust assets goes beyond the bounds of reasonable judgment.
The executors and trustees also have taken the position that they must retain the Berjo stock in order to preserve the intent of the testator to give to the decedent’s son the opportunity of exercising the option given to him under the provisions of article VI of the decedent’s will. The purpose of the option given by the testator to his son under article VI of the will was to provide for continuity of management and control of Berlin & Jones Company, Inc. in the family. It was not given primarily and solely to provide him with an additional monetary advantage at the expense of the decedent’s daughter and her children. There is no longer a family business to continue and no Berlin & Jones Company, Inc., stock among the trust assets. The attempt by the executors and trustees to save the alleged additional gift by retaining the original corporate charter is a meaningless gesture without real substance.
It is the opinion of this court that the continued retention of Berjo Corporation stock among the assets of the trust estate is unsound and that the trustees’ contemplated course of conduct with respect to such stock would be improper. The court, therefore, directs the trustees to divest themselves of the ownership of the stock held by them in Berjo Corporation and to thereafter file a supplemental account upon which this court can enter an appropriate decree.