**William K. JACOBS, Jr. and Edna L. Jacobs, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 69 Civ. 3035.**

United States District Court, S. D. New York.

Nov. 15, 1971.

Cleary, Gottlieb, Steen & Hamilton, New York City (George E. Cleary, Leslie B. Samuels, Clifford P. Case, III, New York City, of counsel), for plaintiffs.

Whitney N. Seymour, Jr., U. S. Atty., Southern District of New York (Daniel H. Murphy, II, Asst. U. S. Atty., of counsel), for United States of America.

TYLER, District Judge.

This is an action brought by William K. Jacobs, Jr. and his wife, Edna L. Jacobs, seeking a refund of income taxes and interest from the date of payment. This court has jurisdiction pursuant to 28 U.S.C. § 1346(a) (1).

Plaintiffs and defendant ("the Internal Revenue Service" or "the IRS") have cross moved for summary judgment under Rule 56, Fed.R.Civ.P. There are no genuine issues of material fact; accordingly, the case is ripe for summary disposition.

By agreement dated December 23, 1958, plaintiff Edna L. Jacobs, one of the joint taxpayers herein, created an irrevocable trust providing for payment of the net income from the trust estate to her sister, Viola L. Hendrickson, for life, with the remainder to the Tebil Foundation, Inc., a charitable foundation.[1] The plaintiff's husband, William K. Jacobs, Jr. (co-plaintiff herein), was named as trustee.

In 1961, Edna L. Jacobs contributed stock, valued at $10,281.25, in a regulated investment company to the trust. The plaintiffs took a part of that contribution as a charitable deduction on their 1961 joint federal income tax return. That deduction was disallowed by the IRS on the ground that the powers granted the trustee under the trust instrument were so broad, when applied to a trust *res* of regulated investment company stock, that there was no assurance that the foundation in fact would receive the bequest or some determinable part of the gift. In short, the IRS ruled that the remainder interest was not presently ascertainable and, hence, not severable from the non-charitable interest. The deficiency assessment which was levied against plaintiffs was paid, and this action was brought to recover so much of the deficiency as stems from the disallowance of the charitable contribution, such amount being $3,410.42 plus interest from the date of payment.

The trust agreement provided, in part, as follows:

## "ARTICLE I

### Disposition of Income and Principal

A. The net income shall be paid to the Donor's sister, Viola L. Hendrickson, or applied directly for her benefit, so long as she shall live, in equal quarterly installments, as nearly as may be, or more often in the discretion of the Trustee.

B. Upon the death of Viola L. Hendrickson, the principal of the trust, at that time remaining, shall be distributed to The Tebil Foundation, Inc. a New York membership corporation   *   *   *

## ARTICLE II

### Investment Provisions

(c). To make such purchases or exchanges at such times, in such manner and upon such terms as he shall deem advisable, and to invest in such bonds, preferred or common stocks, mortgages, interests in any kind of investment trust, or other evidences of rights, interests or obligations, secured or unsecured, or in such other property, real or personal, as he shall deem advisable, whether or not any investment shall produce income or be of a wasting asset nature, and without regard to any law concerning the investment of trust funds or to the amount which shall be invested in any one securi-

---

1. The president of the Tebil Foundation is plaintiff, William K. Jacobs, Jr., and co-plaintiff, Edna L. Jacobs, is vice president and secretary.

ty or in any one kind of investment and even though all or substantially all of such investments may be in common stocks or other equity securities. * * *

## ARTICLE III

### Administrative Provisions

(g). To pay any and all expenses, costs, fees, taxes, penalties or other charges and to charge the same against principal or income or partly against the principal and partly against the income of the trust created by this Agreement; * *

## ARTICLE IV

### Classification of Income and Principal

All cash dividends other than liquidating dividends, irrespective of whether the same are of the kind sometimes described as "ordinary dividends" or "extraordinary dividends", all cash distributions from so-called "wasting" investments and including so-called "tax-free", "reduction of tax basis" and "capital gains" dividends shall be deemed to be income. All dividends payable in stock of the company or corporation declaring the same of the same class shall be deemed to be principal, except that such dividends paid at regular or substantially regular intervals in lieu of or in conjunction with cash dividends shall be deemed to be income. All dividends payable in bonds, notes or other evidences of indebtedness and dividends payable in the shares of companies or corporation other than the companies or corporations declaring such dividends shall be treated as income and not as principal to the extent that they represent earned surplus of the declaring company or corporation. Notwithstanding any of the foregoing the Trustee is authorized, in his absolute discretion, to allocate any dividend, or any portion thereof, whether in cash or other property, to income or to principal if he shall deem such action advisable for any reason. The provisions of this Article shall not be deemed to authorize any act by the Trustee which may be a violation of any law prohibiting the accumulation of income * * *

## ARTICLE VIII

### Accounting by Trustee

The Trustee may at any time and from time to time render an account of his transactions as Trustee with respect to the trust created hereunder to the current income beneficiary and to any one or more of the persons presumptively entitled to the next eventual estate in whole or in part as to principal.

Such current income beneficiary and such remaindermen shall have full power to settle finally any such account, and on the basis of such account to release the Trustee, individually and as Trustee, from all liability, responsibility or accountability for his acts or omissions as Trustee. In the event any one or more of such designated persons shall be a minor or under other legal disability, then his or her guardian or committee in any jurisdiction, or in the case of a minor without a guardian, his or her parents or either of them, shall have full power to act with respect to any such settlement and release. Any such settlement and release shall be conclusive upon all persons, whether or not then in being, having or claiming any interest under this Agreement, shall be a complete discharge to the Trustee as to all matters set forth in such amount and shall be binding and have the force and effect of a final decree, judgment or order of a court of competent jurisdiction rendered in an appropriate action or proceeding for the settlement of such an account in which jurisdiction was obtained of all necessary and proper parties. The foregoing provision, however, shall not preclude the Trustee from having his accounts judicially settled if he shall so desire."

■ This case involves the possibility of indirect invasion of an *inter vivos* trust corpus. Plaintiffs have not argued that those Supreme Court and lower federal court cases dealing with the possibility of direct invasion of a testamentary trust corpus would not be controlling in this case. Indeed, plaintiffs have strongly relied on cases involving direct

invasion of testamentary trusts as supporting their view that the charitable remainder in this case is ascertainable. The distinction between the income and estate tax requirements for a charitable deduction, although not raised by counsel, are worthy of discussion. Plaintiffs have claimed a deduction from income for the charitable gift under the income tax sections of the Internal Revenue Code, § 170(a). The Code also allows a deduction in the computation of estate and gift taxes. See 26 U.S.C. §§ 2055, 2522. The estate and gift tax regulations provide for a deduction under the above sections if (1) the charitable interest is "presently ascertainable, and hence severable from the non-charitable interest," and (2) viewing the circumstances as of the date of the decedent's death, "the possibility that the charitable transfer will not become effective is so remote as to be negligible." See Estate Tax Regulations, 26 C.F.R. § 20.2055–2(a), (b); Gift Tax Regulations, 26 C.F.R. § 25.2522(a)–2(a), 2(b). The regulations promulgated under the income tax section allow a charitable deduction when the latter condition quoted above is satisfied. See Income Tax Regulations, 26 C.F.R. § 1.170–1(e). Yet, there is no specific income tax regulation comparable to the above condition requiring a severable and ascertainable remainder. As I interpret the regulations and tax law, the two conditions require different analysis: the former requires that there be a sufficiently adequate standard for invasion, and the latter requires that, assuming the adequate standard, the charity is sure to receive its bequest. In my view there is no difference here material between a charitable remainder of a testamentary trust and that of a *inter vivos* trust; thus, I have applied the analysis of Supreme Court decisions involving testamentary trust remainders. In doing so, there has been an indirect incorporation of the severable and ascertainable requirement into the income

tax provisions. Moreover, Rev.Rul. 60–385, 1960–2 Cum.Bull. 77 (quoted *infra*) has incorporated into the income tax provisions, insofar as stock of a regulated investment company is concerned, the estate and gift tax requirement of a severable and ascertainable remainder.

■ Additionally, I do not understand the law to be that an indirect power of invasion should be differentiated from a direct power. Where broad administrative powers are given a trustee which might result in reduction of a trust corpus, the result is the same as reduction through the possibility of direct invasion.

■ With the peripheral issues in this case thus brought into focus, the question presented to this court is very narrow. The Internal Revenue Code permits a deduction from gross income equivalent to the amount of all bequests to qualified charitable and religious organizations. 26 U.S.C. § 170(a) (1). Such a deduction, however, may be taken only insofar as the interest is presently ascertainable and hence severable from the non-charitable interest. See Merchants Nat'l Bank of Boston v. Commissioner of Internal Revenue, 320 U.S. 256, 64 S.Ct. 108, 88 L.Ed. 35 (1943). The IRS does not challenge the status of the remainderman, Tebil Foundation, Inc., as a qualified charity under I.R.C. § 170(a) (1). Thus, the narrow question presented is whether the remainder interest is presently ascertainable.

The IRS claims that the remainder interest cannot be ascertained because the trust instrument allows the trustee to allocate capital gains dividends from investment companies to income rather than principal. Accordingly, its argument continues, the trust *res* of regulated investment company stock will be diminished to an indeterminate extent through the paying out of capital gains and retention of capital losses.[2]

On the other hand, plaintiffs argue that the likelihood of any material dimi-

---

2. The government contends that under the governing provisions of the Internal Revenue Code, there is a strong incentive on the part of fund managers to pay out rather than reinvest realized capital since

capital gains realized by a regulated investment company, where passed through to the shareholders as dividends, are not subject to corporate tax. 26 U.S.C. § 852(b) (3) (1964). Therefore, so the

nution in principal due to allocation of capital gains dividends is not "appreciably greater than the general uncertainty that attends human affairs." Ithaca Trust Co. v. United States, 279 U.S. 151, 154, 49 S.Ct. 291, 73 L.Ed. 647 (1929). Plaintiffs further stress that, under New York law, certain constraints are imposed upon the trustee so that he does not have unfettered discretion to destroy the corpus without regard to the rights of the remainderman, thus insuring that the amount of the charitable interest is presently ascertainable. In support of this position, they rely primarily upon Bankers Trust Co. v. United States, 308 F.Supp. 545 (S.D.N.Y., 1970), aff'd on other grounds, 438 F.2d 1046 (2d Cir., 1971).

I

In my view, plaintiffs are incorrect in urging that New York law provides the requisite standard to ascertain the extent to which corpus will be depleted in this case. Accordingly, I hold that the value of the gift to Tebil Foundation, Inc. is not presently ascertainable and hence summary judgment must be granted to defendant. While a court of equity may have power to stop a trustee from acting in such a way as to deplete or consume a corpus, thus providing a fixed standard at one end of the spectrum, such power does not provide a reliably predictable standard to solve the problem presented in this case—i. e. where along the continuum leading to depletion equitable action can and should occur. In the present case, the trust instrument grants the trustee broad administrative powers. Article II(c), for example, allows the trustee to invest in wasting assets and gives him wide latitude as to assets in which he can reinvest. Article III(g) allows the trustee to charge trust expenses against principal. More important, Article IA requires the trustee to pay the net income quarterly to the life tenant, and Article IV allocates cash dividends, including capital gains dividends, to income. In addition, under Article VIII, the trustee is not required to account to a court. With these and other broad powers given to him to deal with the trust res of regulated investment company stock, the trustee here could in good faith carry out recognized fiduciary duties under New York law, yet still invade corpus in the manner suggested by the IRS to an immeasurable extent, thus rendering impossible present valuation of the remainder interest. While plaintiffs have cited many cases holding that a court of equity will prevent a trustee from effecting a substantial diminution or depletion of the remainderman's interest, such cases do not provide a fixed standard, accurately calculable, by which we can ascertain the value of the charitable remainder in this case. See, e. g. In re Gould's Will, 17 A.D.2d 401, 234 N.Y.S. 2d 825, 828 (3d Dept., 1962) ("The yardstick for determining the duties of trustees is governed by the rule of the 'prudent man'."); In re Dickson's Estate, 38 Misc.2d 678, 237 N.Y.S.2d 572, 576 (1963) (" * * * for the best interests of all persons interested in the estate."). The standards imposed upon the trustee in the present case by New York law do not conform to the rules laid down by the Supreme Court for determining whether or not a remainderman's interest is presently ascertainable. The words of the Supreme Court in Merchants Nat'l Bank, *supra,* are especially instructive here:

"Congress and the Treasury require that a highly reliable appraisal of the amount the charity will receive be available, and made, at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. * * * Only where the conditions on which the extent of invasion of the corpus depends are fixed by

argument goes, a manager who is realizing capital gains will also, over a long enough period, realize capital losses; if the capital gains are all paid out when realized, the capital losses will gradually cut into and reduce the corpus.

reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted from the charity and the present value of the bequest become adequately measurable." 320 U.S. at 261, 64 S. Ct. at 111.

The comparatively strict standards laid down by the Court in *Merchants Nat'l Bank, supra,* have also been applied in Henslee v. Union Planters Nat. Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949) and Commissioner of Internal Revenue v. Sternberger's Estate, 348 U. S. 187, 75 S.Ct. 229, 99 L.Ed. 246 (1955).

█ Plaintiffs place emphasis on a recent case in the Second Circuit as supporting their view that the charitable remainder in this case is presently ascertainable. See *Bankers Trust, supra. Bankers Trust* held that New York law provides adequate standards, in light of the administrative powers therein involved, to prevent depletion of the trust corpus; hence, the remainder interest was there determined to be presently ascertainable. Subsequent cases have focused on whether or not the pertinent state law provides an adequate standard for ascertaining the value of the charitable remainder short of depletion of the corpus. Cf. Rand v. United States, 445 F.2d 1166 (2d Cir., 1971); Estate of Stewart v. Commissioner of Internal Revenue, 436 F.2d 1281 (3d Cir., 1971), petition for cert. filed, 39 U.S.L.W. 3550 (June 3, 1971) (No. 1780). The IRS does not contend that the charitable remainder will be completely eradicated. Rather, it is said that there will be an uncertain amount of attrition and, thus, the value of the remainder is not presently ascertainable. I agree. Indeed, parenthetically, I incline to the view that *Bankers Trust* is incorrect insofar as it lends credence to the view that the broad powers granted the trustee in this case are limited by New York law to make the charitable contribution ascertainable. While New York law may well provide calculable standards with regard to depletion of a trust corpus, it does not provide the rigid standards required by the Supreme Court and Treasury Regulations to determine where along the continuum a court of equity will step in when broad administrative powers are granted the trustee as in the present case.

If the only question before this court was whether the charity is sure to receive a part of the bequest, the theory of *Bankers Trust* would be more appropriate. As discussed earlier, however, I am inclined to follow the reasoning of Rev.Rul. 60–385. At least in the context of this case, there is no factual or legal difference between a testamentary and *inter vivos* trust remainder. Accordingly, the severable and ascertainable provisions of the estate and gift tax regulations, as incorporated into Supreme Court decisions dealing with testamentary trust remainders and into Rev.Rul. 60–385 dealing with income, estate and gift tax deductions, operate to deny a deduction in this case.

Plaintiffs' reliance on the heretofore quoted words of Mr. Justice Holmes in *Ithaca Trust, supra,* 279 U.S. at 154, 49 S.Ct. at 291—i. e. the argument that the likelihood of any material diminution in principal due to allocation of capital gains dividends is not " * * * appreciably greater than the general uncertainty that attends human affairs."—is misplaced. Close scrutiny of the context in which the words were stated reveals a stricter standard than the quotation standing alone. The Court in *Ithaca Trust* upheld a charitable deduction where the power to invade corpus extended to amounts "that may be necessary to suitably maintain [my wife] in as much comfort as she now enjoys." The Court found that the above standard was "fixed in fact and capable of being stated in definite terms of money," and that the income of the trust was "more than sufficient to maintain the widow as required" by the stated standard. The language of Mr. Justice Holmes " * * * amounted to determining it was very unlikely, in view of the amount of the income generated by the corpus, that principal itself would have to be invaded." Estate of Stewart, *supra,* 436 F.2d at 1281. The standard for invasion of the corpus in *Ithaca Trust,* if invasion became neces-

sary, was readily calculable—the widow's prior way of life. Subsequent cases of the Supreme Court have applied and construed *Ithaca Trust* as applying the rigid standard which is today applied in this case. See e. g. *Merchants Nat'l Bank, supra.*

## II

Plaintiffs raise one further point which must be put to rest. They claim that Revenue Ruling 60–385 (see Appendix A to this opinion) is "discriminatory" in that it singles out for special treatment one type of distribution (a capital gains dividend) by .one type of entity (a regulated investment company). It appears that because of special provisions in the Internal Revenue Code, a capital gains dividend of a regulated investment company affords fund managers the opportunity to reduce appropriate taxes at the expense of the remainderman—an opportunity not available to distributions by other entities. See text and attached footnote 2. In light of this fact, any claim of discrimination would appear to be without merit.

Accordingly, summary judgment is denied as to plaintiffs and granted for the defendant.

It is so ordered.

## APPENDIX A

Rev.Rul. 60–385, 1960–2 Cum.Bull. 77:

Advice has been requested concerning the amount of allowable charitable deduction in a case where the charitable remainder interest in a trust may or may not be severable from the noncharitable interest, depending upon whether the capital gains received are added to the trust income or corpus.

A taxpayer transferred property to an irrevocable trust, with directions to pay the trust income to his son for life and on the son's death to deliver the trust corpus to a charitable organization which meets the requirements of section 170 (income tax), section 2055 (estate tax) and section 2522 (gift tax) of the Internal Revenue Code of 1954. The trust instrument provides that the corpus of

the trust may be invested in stock of regulated investment companies and that dividends received by the trustee which represent capital gains realized from the sale of securities owned by such companies shall be treated as corpus and held for the benefit of the charitable remainderman.

I.T. 3707, C.B. 1945, 114, holds that where a taxpayer creates an irrevocable trust, reserving the income to himself for life with remainder to a charitable organization which meets the requirements of section 23(*o*) of the Internal Revenue Code of 1939 (corresponding to section 170 of the 1954 Code), the present value of the remainder interest is deductible in the manner and to the extent provided in such section.

Section 20.2055–2 of the Estate Tax Regulations and section 25.2522(a)–2 of the Gift Tax Regulations provide, in part, that where a trust is created or property transferred for both a charitable and a private purpose, a deduction may be taken only insofar as the charitable interest is presently ascertainable and hence severable from the noncharitable interest.

Accordingly, it is held that where, as under the present facts, the charitable remainder interest is severable from the noncharitable interest, its present worth may be ascertained by multiplying the fair market value of the transferred property by the appropriate actuarial remainder factor from Table I of section 25.2512–5 of the Gift Tax Regulations or Table I or II of section 20.2031–7 of the Estate Tax Regulations, whichever is applicable. The present worth so determined is deductible for income, estate or gift tax purposes in the manner and to the extent provided in sections 170, 2055 and 2522 of the Code.

However, if the trust instrument provides that dividends representing capital gains realized as aforesaid shall (or, in the trustee's discretion, may) be treated as income and paid to the life tenant, or if the instrument could be so construed under applicable local law, then the charitable interest is not severable from the non-charitable interest since no known

formula has been advanced for ascertaining the value of the charitable interest. Therefore, no deduction for income, estate, or gift tax purposes is allowable with respect to the transfer.

In view of the position taken in Revenue Ruling 55–620 and pursuant to authority contained in section 7805(b) of the Internal Revenue Code of 1954, the latter conclusion above, relating to capital gains treated as income to the life tenant, will not be applied in the case of contributions and gifts made before January 1, 1961.

Revenue Ruling 55–620, C.B. 1955–2, 56 holds that the present worth of the remainder interest in an irrevocable trust passing to a charity, where the trust corpus is to be invested in stock of a regulated investment company and trust income is to be paid to the donor for life, is deductible by the donor in the manner and to the extent provided by section 170 of the Code, irrespective of whether the capital gain dividends received by the trustee are distributed as income to the donor or added to the corpus of the trust. Because Revenue Ruling 55–620 is contrary to the above-stated position, it is hereby revoked.