ESTATE OF ABRAHAM SIMONSON, DECEASED, NATHANIEL SIMONSON AND ERNEST C. GEIGER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 941–69. Filed January 10, 1973.

*Ernest C. Geiger*, for the petitioners.
*Stephen M. Miller* and *Ronald Wagenheim*, for the respondent.

STERRETT, *Judge:* Respondent determined a deficiency in the Federal estate tax of the Estate of Abraham Simonson in the amount of $399,045.98.

Due to concessions the sole issue remaining for adjudication is whether the value of a trust's remainder interest payable to a charitable beneficiary was subject to ascertainability at the time of the decedent's death. Such a decision will lead us to a conclusion relative to the estate's right to a charitable deduction within the purview of section 2055, I.R.C. 1954.[1]

#### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

Decedent, Abraham Simonson, died on September 14, 1964. Petitioner Nathaniel Simonson is the surviving executor of the estate of the decedent. Ernest C. Geiger was an executor of the estate of David Geiger and had duly qualified as such on October 16, 1964. He died on May 12, 1968. The Federal estate tax return was timely filed on December 13, 1965, with the district director of internal revenue, New York, N.Y.

On December 27, 1963, the decedent executed a last will and testament which provided in part for the creation of two trusts, a marital

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

trust for the decedent's wife, Henrietta Simonson, and a second trust income payable to decedent's son Nathaniel Simonson (hereinafter referred to as Nathaniel) during his lifetime and upon his death corpus to be distributed to various charitable organizations. The will provides in pertinent part as follows:

EIGHTH: All the rest, residue and remainder of my estate, of whatever nature or description and wherever situate, including any lapsed legacies, I give, devise and bequeath to my trustees hereinafter named, In Trust, Nevertheless, for the purposes and upon the terms and conditions hereinafter set forth:

A. If my beloved son, NATHANIEL SIMONSON, also known as NAT SIMONSON, shall survive me, I direct my trustees to hold, invest and reinvest my residuary estate, hereinafter called the "Fund", collect the income and profits therefrom and during the natural lifetime of my said son to pay to him the net income therefrom in semi-annual or more frequent installments as my trustees may determine.

B. Upon the death of my son, NATHANIEL SIMONSON, or in the event my said son does not survive me, then upon my death, I direct my trustees to divide, pay over and distribute this fund or the then remainder thereof, together with any and all accumulated and undistributed income therefrom, in equal shares, to no more than four or five charitable organizations as hereinafter defined. Among them shall be included Brandeis University, Waltham, Massachusetts, Albert Einstein College of Medicine of Yeshiva University, Bronx, New York and University Settlement Society of New York, at Eldridge and Forsythe Streets, in the Borough of Manhattan, City of New York. Each such gift shall be designated as a memorial to my family and shall bear and perpetuate the Simonson name and shall be used by such organization for general charitable purposes or for such special or limited purpose within the authorized area of activity of such charitable organization as my trustees may specify. I authorize my trustees to subject any such gift to a charitable organization to any lawful terms, conditions and restrictions which they in their absolute and uncontrolled discretion shall deem necessary, appropriate or desirable. Without intending hereby to limit or restrict the discretion of my trustees, I request that in selecting additional charitable institutions for receipt of a share of my estate, my trustees give special consideration to organizations whose work is in the fields of education, medical research, the care of underprivileged children, aid to the blind and hospitals for chronic diseases.

The words "charitable organizations" as hereinabove used shall be deemed to mean organizations, corporations, associations, funds, foundations and institutions organized exclusively for religious, charitable, educational and/or scientific purposes which are tax exempt and gifts to which may be deducted in determining my taxable estate under the then applicable provisions of the Internal Revenue Code and New York tax law.

I authorize my trustees during any reasonable period while they may be considering and deciding upon additional charitable organizations to which distribution is to be made in accordance with the foregoing, to invest and reinvest such fund and to collect and accumulate the income and profits therefrom. The net income and profits accumulated during any such period shall be divided, paid over and distributed to the charitable organizations together with the principal from which derived.

NINTH: A. I authorize my executors and trustees to retain for such period

of time, during his lifetime, as my son NATHANIEL in his absolute and un-controlled discretion shall deem appropriate and advisable in view of all the circumstances my two thousand one hundred sixty six and two-thirds (2166⅔) shares of stock in the Fashion Center Building Corp. and my two (2) shares of stock in the Fashion Center Service Corporation. In the event that it shall be determined to sell such shares of stock during the life of my son, NATHAN-IEL, I direct my trustees to afford first opportunity to acquire such shares of stock to the respective issuing corporations, and to the extent such offer is not accepted by the corporations concerned, to the persons who then own shares of stock in the respective corporations. It is my desire, if the same can be achieved without unreasonable disadvantage to my estate or the trusts directed to be established hereunder, of which fact my trustees shall be the absolute judges, that the disposition of my shares of stock in these corporations shall not disturb the ownership and control of said corporations during the lifetime of my said son, NATHANIEL, without his consent, and I direct my executors and trustees to be mindful of this fact in negotiating the price to be paid for such shares of stock and the terms of payment.

B. I authorize my executors and trustees in their absolute discretion and judgment to extend for such period as they deem advisable and appropriate in all the circumstances the time during which the surviving partners of Cohen, Simonson & Co. shall be required to pay out the amount due my estate for my interest in said partnership. I also authorize my executors and trustees, if they in their absolute and uncontrolled discretion shall deem it advisable, to permit all or part of the amount due my estate with respect to my interest in Cohen, Simonson & Co. to be retained by any successor partnership thereto (but only during the lifetime of my son, NATHANIEL SIMONSON, and only while he is, and continues to be, a general partner of any such successor partner-ship) for such period of time and upon such terms and conditions as my execu-tors and trustees in their absolute and uncontrolled discretion shall deem appropriate.

TENTH: I direct that all inheritance, estate, transfer, succession and death taxes or duties (including interest thereon) imposed by any jurisdiction what-soever by reason of my death, upon or in relation to any property includable in my estate for the purpose of any such taxes or duties, whether such property passes under the provisions of this Will or outside the provisions of this Will, shall be paid out of my residuary estate as a charge of administration and shall not be apportioned to any beneficiary hereunder nor to any person receiving such property.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

TWELFTH: I hereby give and grant to my executors and trustees herein named and their successors, the following powers and authority which may be exercised by them at any time and from time to time, as they shall, in their absolute discretion, deem advisable:

A. To hold and retain all or any part of my estate or any trust created hereby, in the form in which the same may be at the time of my decease, or at the time of the receipt thereof by my said trustees from my executors, as long as they may deem advisable.

B. To invest and reinvest any funds in my estate or any trust created hereby in any property, real or personal, of any kind or nature, including, without limita-tion, stocks, whether common, preferred or otherwise, listed on the New York Stock Exchange or the American Stock Exchange, without being limited or re-

stricted to investments prescribed or authorized for executors or trustees by the laws of New York or any other state.

C. To sell, exchange, partition or otherwise dispose of any property, real or personal (except property specifically bequeathed) of which I may die seized or possessed, or which may at any time form a part of my estate or any trust created hereby, at public or private sale, for such purposes and upon such terms, in such manner and at such prices, as they may determine.

D. To mortgage any property, real or personal, of which I may die seized or possessed, or which may at any time form a part of my estate or any trust created hereby, in such amount and on such terms as they may deem advisable; to lease any such property, for such term or terms, and upon such conditions and rentals, and in such manner, as they may deem advisable, irrespective of whether the term of any such lease shall exceed the period permitted by law or the probable period of any trust created hereby, and to renew or modify any such leases, to make repairs, replacements and improvements, structural or otherwise, of any such property, as they may deem advisable.

E. To renew or extend the time of payment of any obligation, secured or unsecured, payable to or by my estate or any trust created hereby, for as long a period or periods of time, and on such terms, as they may determine; to borrow such sums of money as they in their discretion may deem in the best interests of my estate or of any trust created hereby and to pledge any property in my estate or in such trust or otherwise secure the repayment thereof; and to adjust, settle, compromise and arbitrate claims or demands (including claims or demands involving estate, gift, income or other taxes) in favor of or against my estate or any trust created hereby, upon such terms as they may deem advisable.

F. In respect of any securities forming a part of my estate or any trust created hereby, to vote upon any proposition or election at any meeting, and to grant proxies, discretionary or otherwise, to vote at any such meeting; to join in or become a party to any reorganization, readjustment, merger, voting trust, consolidation or exchange, and to deposit any such securities with any committee, depositary, trustee or otherwise and to pay out of my estate or any trust created hereby any fees, expenses and assessments incurred in connection therewith, and to charge the same to principal or income as they may see fit; to exercise conversion, subscription or other rights, or to sell or abandon such rights, and to receive and hold any new securities issued as a result of any such reorganization, readjustment, merger, voting trust, consolidation, exchange or exercise of conversion, subscription or other rights; and, generally to take all action in respect to any such securities as they might or could do as absolute owners thereof.

G. Whenever they are required or permitted to divide or distribute any estate created hereby, to make such division or distribution in kind or in money, or partly in kind and partly in money.

H. To apportion stock, extraordinary, and liquidating dividends received by them, between income and principal, in such manner as they may see fit; and to determine what constitutes such dividends.

I. In connection with making investments, to determine whether to amortize premiums in whole or in part.

J. To engage attorneys, accountants, agents, and such other persons as they may deem advisable, in the administration of my estate and any trust created hereby, and to make such payments therefor as they may deem advisable, and to charge the expense thereof to income or principal as they may determine, and to delegate to such persons any discretion which they may deem proper.

K. To exercise all power and authority, including any discretion, conferred in

this Will, with respect to all accumulations of income under this Will, and with respect to all property held under a power in trust in this Will.

L. To exercise all power and authority, including any discretion, conferred in this Will, after the termination of any trust created herein and until the same is fully distributed.

M. The powers herein granted to my executors and trustees may be exercised in whole or in part from time to time and shall be deemed to be supplementary to and not exclusive of the general powers of executors and trustees, pursuant to law, and shall include all powers necessary to carry the same into effect. The enumeration of specific powers herein shall not be construed to limit in any way or affect the general powers herein granted.

THIRTEENTH: A. I hereby nominate, constitute and appoint my son, NATHANIEL SIMONSON, my friend and longtime associate, FRANCIS G. REA, presently the managing partner of Cohen, Simonson & Co., and my friend and accountant, STEPHEN R. ABRAMS, as executors and trustees under this my Last Will and Testament.

B. A majority of my executors or trustees, as the case may be, shall have the power to make any decision, undertake any action, or execute any document affecting my estate or the trust created hereunder.

On July 22, 1964, the decedent executed a codicil to the above-quoted will which states in part as follows:

SECOND: I hereby nominate and appoint my dear son, NATHANIEL, and my dear friend and attorney, DAVID GEIGER, the executors and trustees of my aforesaid Will, hereby revoking in its entirety the provision in my aforesaid Will relating to the appointment of executors and trustees thereof.

Almost 90 percent of the assets contained in the estate at the time of decedent's death consisted of stock in two closely held corporations ($1,532,000) and his capital account in a partnership ($553,472.23).

The decedent believed the powers granted the trustees were given to facilitate proper control and care of the trusts and not to defeat testator's purpose of creating a tax-exempt charitable bequest.

Cash dividends have been declared with respect to said stock on a regular basis, and no stock dividends have been declared with respect to either corporation.

The estate tax return claimed charitable deductions for the remainder interest in the trust as follows:

| | |
|---|---|
| Brandeis University | $153, 651. 25 |
| Albert Einstein College of Medicine of Yeshiva University | 153, 651. 25 |
| University Settlement | 153, 651. 27 |
| | 460, 953. 74 |

The notice of deficiency states in part:

It is determined that the amount of $460,953.74, as set forth above, claimed as a deduction for charitable bequests is not allowable under section 2055 of the Internal Revenue Code because it was not ascertainable at the date of decedent's death, how much, if any, of the bequests will be received by the organizations.

OPINION

The Court is once again faced with the question of the deductibility under section 2055(a)(2)[2] of a trust's remainder interest payable to a qualified charitable organization. The regulations promulgated with respect to such section, specifically section 20.2055–2(a) and (b), Estate Tax Regs., note that where a trust is created for both a charitable and private purpose, the charitable interest is deductible "only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest" and "the possibility that the charitable transfer will not become effective is so remote as to be negligible."[3]

Respondent urges that the administrative powers granted in the will to the trustee are so broad as to prevent ascertainability and are in reality an indirect power to invade corpus and thus preclude a charitable deduction, citing such decisions as *Rand* v. *United States*, 445 F. 2d 1166 (C.A. 2, 1971), and *Estate of Stewart* v. *Commissioner*, 436 F. 2d 1281 (C.A. 3, 1971).[4] Petitioners, on the other hand, assert that the trustee is required under State law to act in good faith and comply with the intentions of the settlor and therefore such interest is ascertainable and deductible. *In re Estate of Toulmin* v. *United*

---

[2] SEC. 2055. TRANSFERS FOR PUBLIC, CHARITABLE AND RELIGIOUS USES.

(a) IN GENERAL.—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate the amount of all bequests, legacies, devises, or transfers * * * ;

*         *         *         *         *         *         *

(2) to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *

[3] Sec. 20.2055–2 Transfers not exclusively for charitable purposes.

(a) *Remainders and similar interests.* If a trust is created or property is transferred for both a charitable and a private purpose, deduction may be taken of the value of the charitable beneficial interest only insofar as that interest is presently ascertainable, and hence severable from the noncharitable interest. * * *

(b) *Transfers subject to a condition or a power.* If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to or is vested in charity at the time of a decedent's death and the estate or interest would be defeated by the performance of some act or the happening of some event, the occurrence of which appeared to have been highly improbable at the time of the decedent's death, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power. * * *

[4] Other decisions supporting respondent's position are *Gardiner* v. *United States,* 458 F. 2d 1265 (C.A. 9, 1972) ; *First National Bank in Palm Beach* v. *United States,* 443 F. 2d 480 (C.A. 5, 1971) ; *Miami Beach First National Bank* v. *United States,* 443 F. 2d 475 (C.A. 5, 1971) ; *Florida Bank at Lakeland* v. *United States,* 443 F. 2d 467 (C.A. 5, 1971) ; *Atwell* v. *United States,* 339 F. Supp. 425 (S.D. Tex. 1972) ; *Detroit Bank & Trust Co.* v. *United States,* 388 F. Supp. 971 (E.D. Mich. 1971), affirmed per curiam     F. 2d (C.A. 6, 1972) ; *Jacobs* v. *United States,* 334 F. Supp. 388 (S.D. N.Y. 1971).

*States*, 462 F. 2d 978 (C.A. 6, 1972) ; *Estate of George I. Speer*, 57 T.C. 804 (1972).[5]

We hold for petitioners. It is unnecessary to go into a long exposé in support of our conclusion. Rather we really need only point out that this Court in the *Estate of Lillie MacMunn Stewart*, 52 T.C. 830 (1969), faced with the precise issue here and with more extensive trustee powers and under the same State law held the interest ascertainable. For example, with respect to the trustee powers, there were two significant administrative powers held by the trustee in *Stewart* which are not present here; namely, the power to invest trust principal in "any so-called 'Wasting asset' or so-called 'unproductive property' " and the further power "To apportion to principal or to income or in part to both" any income received in respect of any trust property. We do not construe the trustee powers in the case at bar, "To invest and reinvest any funds * * * in any property, real or personal, of any kind or nature" and "To apportion stock, extraordinary, and liquidating dividends * * * between income and principal," as being nearly as broad in scope as those cited from the *Stewart* case.

Although our *Stewart* decision was later reversed on appeal, 436 F. 2d 1281 (C.A. 3, 1971),[6] we did not seize the opportunity in our recent decision in *Estate of George I. Speer, supra*, to reexamine the position enunciated in the earlier case, nor do we wish to do so in the present case. Rather we will confine ourselves to stating the reasons for reaching the conclusion we do here.

A will must be construed in its entirety to determine the testator's intent, and such intent is significant in determining the manner in which the trustee will exercise his authority. *Greer* v. *United States*, 448 F. 2d 937, 946 (C.A. 4, 1971) ; *Estate of George I. Speer*, 57 T.C. at 810; *Doss* v. *United States*, 326 F. Supp. 1320, 1322 (N.D. Tex. 1971). The will in the instant case conveyed the income of a trust to the deceased's child for life, remainder to charity. The provision pertaining to the wife's marital deduction trust states that the deceased "hope[s] and request[s], but do[es] not require, that my beloved wife, in ex-

[5] In further support of petitioners' point of view see *Greer* v. *United States*, 448 F. 2d 937 (C.A. 4, 1971) ; *Peoples Trust Co. of Bergen County* v. *United States*, 444 F. 2d 193 (C.A. 3, 1971) ; *Kate Froman Trust*, 58 T.C. 512 (1972) ; *Estate of Phyllis W. McGillicuddy*, 54 T.C. 315 (1970) ; *Doss* v. *United States*, 326 F. Supp. 1320 (N.D. Tex. 1971) ; *Old Colony Trust Co.* v. *United States*, 317 F. Supp. 618 (D. Mass. 1970) ; *Marold* v. *United States*, 322 F. Supp. 664 (D. N.J. 1970) ; *Bankers Trust Co.* v. *United States*, 308 F. Supp. 545 (S.D. N.Y. 1970), affirmed on another issue 438 F. 2d 1046 (C.A. 2, 1971).

[6] The Court in the instant case is not required to follow the Third Circuit's decision in *Stewart* because an appeal herein lies with the Second Circuit, and in addition, this case is distinguishable on its facts. *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), is not applicable. We further note that the Second Circuit's decision in *Rand* v. *United States*, 445 F. 2d 1166 (C.A. 2, 1971), denying a charitable deduction, also does not necessitate a disallowance of the deduction in the instant case in light of the fact that Vermont law was the controlling State jurisdiction. See *Estate of George I. Speer*, 57 T.C. 804, 812 (1972).

ercising this power of appointment, be cognizant of and fulfill my desire to establish memorials to the Simonson family in the fields of education, the care of underprivileged children, medical research, aid to the blind and hospitals for chronic diseases, as hereinafter expressed in this my Last Will and Testament." The property subject to the wife's general power of appointment was to be added to the corpus of the trust in issue if such power was not exercised. Clearly, therefore, it is evident that the testator intended to make a bequest of trust principal to charity, and went to the extent of leaving a written reminder to his wife of this fact. "If [a] testator evidently intends to make a charitable gift, it will not be presumed that he gave a power to expend income in such a way as to prevent it from being charitable." 4 Page, Wills, sec. 30.13, p. 95 (Bowe-Parker 1961) ; *Old Colony Trust Co.* v. *United States*, 317 F. Supp. 618, 621 (D. Mass. 1970).

The parties agree that State law is controlling in determining the extent to which a trustee may exercise the powers conveyed to him by the language of the trust instrument. Under New York law it is manifest that the grant of discretion to a trustee, however broad, does not "relieve him from obedience to the great principles of equity which are the life of every trust." *Carrier* v. *Carrier*, 226 N.Y. 114, 123 N.E. 135, 138 (1919). The trustee must act for the best interest of all beneficiaries. *In re Dickson's Estate*, 38 Misc. 2d 678, 237 N.Y.S. 2d 572 (N.Y. County Surr. Ct. 1963) ; *In re Woodin's Estate*, 118 N.Y.S. 2d 465 (N.Y. County Surr. Ct. 1952). He is governed by the rule of the "prudent man." *In re Gould's Will*, 17 App. Div. 2d 401, 234 N.Y.S. 2d 825 (Sup. Ct. 1962). Lastly, a trust provision excusing the trustee from liability for failure to exercise reasonable care, diligence, and prudence is void. N.Y. Est., Powers & Trusts Law sec. 11–1.7(a)(1) (McKinney 1967) ; *In re Gibson's Estate*, 46 Misc. 2d 954, 261 N.Y.S. 2d 550 (Nassau County Surr. Ct. 1965) ; *In re Ascher's Estate*, 175 Misc. 943, 26 N.Y.S. 2d 1000 (Richmond County Surr. Ct. 1941).

Having recognized the deceased's intent to convey the corpus of his trust to charity and the limits placed upon the trustee's discretion by New York law it is patently evident to this Court that such interest is ascertainable. See *Bankers Trust Co.* v. *United States*, 308 F. Supp. 545, 548 (S.D.N.Y. 1970), affirmed on another issue 438 F. 2d 1046 (C.A. 2, 1971), wherein the court stated:

> The trustees' powers, therefore, to invest in wasting assets or to allocate cash receipts to principal or income [7] is not an indirect power of invasion because it is limited by the testator's obvious intention of granting the remainder to charity and by New York law which requires a trustee to act for the benefit of the remaindermen. The charitable remainder is ascertainable and qualifies for a deduction from gross estate under § 2055 of the Internal Revenue Code. * * *

---

[7] As noted heretofore the instant trustees' powers are not that broad.

"To hold otherwise would be to turn what are commonplace trust powers intended simply to provide administrative flexibility into a substantive grant of dispositive flexibility," *Estate of Lillie MacMunn Stewart*, 52 T.C. at 836. Cf. *Estate of Edward E. Ford*, 53 T.C. 114, 125–129 (1969), affirmed per curiam 450 F. 2d 878 (C.A. 2, 1971).

We find additional support for this result in a recent decision promulgated by the Court of Appeals for the First Circuit wherein the court in *Old Colony Trust Co.* v. *United States*, 423 F. 2d 601, 602–603 (C.A. 1, 1970), faced with a question regarding trustees' powers, stated:

Trustee powers given for the administration or management of the trust must be equitably exercised * * *, for the benefit of the trust as a whole. Blodget v. Delaney, 1 Cir., 1953, 201 F. 2d 589; United States v. Powell, 10 Cir., 1962, 307 F. 2d 821; Scott, Trusts §§ 183, 232 (3d ed. 1967); Rest. 2d, Trusts §§ 183, 231.* * *

In sum we find the trustee powers here in issue to be nothing more than the traditional boilerplate powers long accorded trustees to give them some freedom of action outside the courts as distinguished from the more precise, definitive, even sophisticated, powers created by tax advisers to cover every conceivable contingency and which, on many occasions, have resulted in the very tax results sought to be avoided. It follows that we have no difficulty in holding for the petitioners on our conclusion that the value of the charitable remainder is presently ascertainable.

*Decision will be entered under Rule 50.*