578 F.2d 790
 78-2 USTC P 13,250
 SECURITY PACIFIC NATIONAL BANK, Executor under the Will of
J. Benton Van Nuys, Deceased, Security Pacific National
Bank, Trustee under the Will of J. Benton Van Nuys, Deceased
and Robert Gibson Johnson, Executor under the Will of Emily
Van Nuys, Deceased, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 75-2425.
 United States Court of Appeals,
Ninth Circuit.
 May 26, 1978.
Rehearing Denied July 19, 1978.
 
 Harry A. Olivar (argued), Los Angeles, Cal., for appellants.
 Philip I. Brennan (argued), of Dept. of Justice, Washington, D. C., for appellee.
 Appeal from the United States District Court for the Central District of California.
 Before CARTER, WALLACE, and GOODWIN, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 The executor of the estate of J. Benton Van Nuys appeals from a judgment denying a refund of estate taxes. The issue is whether the estate was entitled to an estate-tax deduction under Section 2055 of the Internal Revenue Code for the charitable remainder trusts created in the decedent's will. The trial court held that the estate was not entitled to the deduction. We affirm.
 
 
 2
 The will provided that half of Van Nuys' separate property was to pass directly to his wife, Emily, and the other half was to be divided into two equal parts: "A" and "B". Part "A" was charged with certain legacies; the balance of Part "A" was to be held in a permanent trust, with income to Emily for life and income thereafter to a named charity. The principal of trust "A" was made subject to invasion if the trustees believed that Emily needed recourse to it. Part "B" was also to be held in a permanent trust with income to Emily for life and income thereafter to charity. Trust "B" was not subject to invasion of principal. Emily died while this litigation has been pending. No invasion of principal was ever necessary, nor was it likely to become necessary, as Emily had more than $2,000,000 in separate property.
 
 
 3
 Except for the power of invasion in trust "A", the terms of trusts "A" and "B" were identical. The will named Emily as executrix of the will and the trustee of both trusts, with Security Pacific National Bank as the successor executor and trustee. The will gave the trustee broad administrative powers, including the power to invest and reinvest the trust fund in investments of "any class, kind or character", not limited to securities of the type authorized for trust fund investments by California law. The will directed the trustee to treat all cash dividends, ordinary or extraordinary, and all stock dividends and "wasting asset" dividends as income.
 
 
 4
 The chief asset in J. B. Van Nuys' estate was stock in two closely held corporations, the Van Nuys Investment Company and the Van Nuys Building Company. The estate also included stock in publicly held corporations. The only wasting asset was a reserved mineral interest appraised at fifty dollars.
 
 
 5
 The charitable remainderman of both trusts is the J. B. and Emily Van Nuys Charities, incorporated by the decedent and his wife in 1957. The IRS concedes that this corporation qualifies as a charitable corporation under I.R.C. § 2055(a)(2).
 
 
 6
 The Internal Revenue Code and the Treasury Regulations provide the framework for inquiry in cases involving estate-tax deductions for charitable remainder interests. Section 2055(a)(2) of the Code allows an estate-tax deduction for transfers to charitable corporations. The Treasury Regulations provide that an estate will be entitled to a deduction for a charitable remainder trust "only insofar as that interest is presently ascertainable and hence severable from the noncharitable interest." Treas.Reg. § 20.2055-2(a) (1958).
 
 
 7
 If the trustee has the power to divert the property to a noncharitable purpose, "the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power." Treas.Reg. § 20.2055-2(b) (1958). Both these limitations were expressly approved by the Supreme Court in Merchants Bank v. Commissioner, 320 U.S. 256, 260-61, 64 S.Ct. 108, 88 L.Ed. 35 (1943), where the Court held that the burden is on the taxpayer to establish that the amount which will reach the charity is "accurately calculable".
 
 
 8
 The government originally disallowed the estate tax deduction in this case on the ground that the will's provision that all stock dividends be treated as income, when combined with the trustee's broad choice of investments, allowed diversion of assets in a manner inconsistent with accurate calculation of the amount of the gift that would go to charity.
 
 
 9
 While the trial court decided the case on a different ground, we believe that the court's judgment can be affirmed on the ground that the stock-dividend provision prevented the charitable remainders from being "presently ascertainable."
 
 
 10
 Several circuit court opinions have considered the extent to which the grant of broad administrative powers to a trustee may preclude an estate from claiming a charitable deduction. The deduction was sustained despite a grant of broad powers in Greer v. United States, 448 F.2d 937 (4th Cir. 1971), and Estate of Toulmin v. United States, 326 F.Supp. 1028 (S.D.Ohio 1971), aff'd, 462 F.2d 978 (6th Cir. 1972). See also Old Colony Trust Co. v. United States, 317 F.Supp. 618 (D.Mass.1970), and Bankers Trust Co. v. United States, 308 F.Supp. 545 (S.D.N.Y.1970). In each of these cases the trustee was empowered to make a broad choice of investments, unlimited by state rules governing trustees, and was empowered to allocate all receipts between principal and income in its sole discretion.
 
 
 11
 The deduction was denied in Gardiner v. United States, 458 F.2d 1265 (9th Cir. 1972), where the trustee was empowered to determine income and principal for all purposes. Courts denied the deduction when faced with similar facts in Rand v. United States, 445 F.2d 1166 (2d Cir. 1971); Florida Bank v. United States, 443 F.2d 467 (5th Cir. 1971); Miami Beach First National Bank v. United States, 443 F.2d 475 (5th Cir. 1971); and First National Bank v. United States, 443 F.2d 480 (5th Cir. 1971). See also Jacobs v. United States, 334 F.Supp. 388 (S.D.N.Y.1971).
 
 
 12
 In all of these cases the courts agreed that broad administrative powers might prevent a charitable remainder from being presently ascertainable. The courts also agreed that the issue is not what a particular trustee is likely to do, but rather what he or she has the power to do and whether that power is limited by an ascertainable standard. See Estate of Stewart v. Commissioner, 436 F.2d 1281 (3d Cir. 1971); Rand v. United States, 445 F.2d at 1170. Cf. Henslee v. Union Planters Bank, 335 U.S. 595, 69 S.Ct. 290, 93 L.Ed. 259 (1949).
 
 
 13
 The different results in these cases can be explained by the court's appraisal in each case of the effect of state law. If the trustee's power to divert funds from the corpus to the life beneficiary was limited by state law to an ascertainable standard, and the trustee could not properly divert property from the trust corpus to any great extent, the deduction was allowed.
 
 
 14
 In this case, the taxpayer has not shown that California law would prevent the trustee from using the broad choice of investments and the stock-dividend allocation provision to divert the corpus of the trust to the life beneficiary. The taxpayer points to no case where the state of California has intervened to prevent a trustee from acting in accordance with a specific grant of authority in the trust instrument. In re Estate of Traung, 207 Cal.App.2d 818, 24 Cal.Rptr. 872 (1962), cited by the taxpayer, is not applicable. That case involved the deviation from the express terms of a trust because of a change of circumstances the incompetence of a trust beneficiary as the result of a brain operation. See also Cal.Civil Code § 730.04.
 
 
 15
 Moreover, as the court observed in Jacobs v. United States, "(w)hile * * * (state) law may well provide calculable standards with regard to depletion of a trust corpus, it does not provide the rigid standards required by the Supreme Court and Treasury Regulations to determine where along the continuum a court of equity will step in when broad administrative powers are granted the trustee * * *." 334 F.Supp. at 394.
 
 
 16
 We hold that the taxpayer in this case did not meet its burden of proving that the charitable remainder interest is accurately calculable. In view of our disposition on this point, we do not reach the other arguments made in the trial court and briefed in this court.
 
 
 17
 Affirmed.